# CASOS RESUELTOS

### EN LA

# CORTE SUPREMA DE PUERTO RICO

EL PUEBLO, DEMANDANTE Y APELADO, *v.* RIERA, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre reivindicación de propiedad inmueble, etc.

No. 1621.—Resuelto en enero 13, 1919.

VENTA DE TERRENOS REALENGOS DE PUERTO RICO HECHA POR ESPAÑA ANTES DE LA GUERRA CON LOS ESTADOS UNIDOS—TRATADO DE PARÍS.—Las tierras que el Gobierno español vendió en Puerto Rico válidamente antes de su guerra con los Estados Unidos no pasaron por el Tratado de París a poder de los Estados Unidos ni por este fueron cedidas al Pueblo de Puerto Rico.

VENTA NULA HECHA POR EL GOBIERNO ESPAÑOL—TRASPASO DEL DERECHO. DE ESPAÑA EN ESA VENTA A LOS ESTADOS UNIDOS.—Cuando el título de venta de cierto terreno de Puerto Rico otorgado por las autoridades españolas antes de la guerra es nulo, España no se había desprendido de su propiedad cuando firmó el Tratado de París y por él pasó esa propiedad a los Estados Unidos y El Pueblo de Puerto Rico como cesionario suyo puede reclamarlo.

INVESTIGACIÓN DE TÍTULOS DE VENTA OTORGADOS POR FUNCIONARIOS ESPAÑOLES EN PUERTO RICO.—Pudiendo España examinar la legalidad del título de venta otorgado por sus funcionarios en Puerto Rico y anularlo, pueden los Estados Unidos como cesionarios de ella y El Pueblo de Puerto Rico como cesionario de los Estados Unidos examinar la validez de los títulos de venta. aunque tenga para ello que investigar los actos de los funcionarios españoles.

VENTA EN COMPOSICIÓN DE TERRENOS REALENGOS—REGLAMENTO DE 17 DE ABRIL. DE 1884—REAL DECRETO DE 1º. DE FEBRERO DE 1894—RESOLUCIÓN DEL INTENDENTE DE PUERTO RICO DE 3 DE ABRIL DE 1894.—El Reglamento de 17 de abril de 1884 para la composición y venta de terrenos realengos en esta. Isla no fijó plazo para que los poseedores de ellos pudieran adquirirlos en composición y fué fijado por el Real Decreto de 1º. de febrero de 1894 según el cual vencía el 17 de abril de 1894 siendo condición además que los terrenos estuvieran en cultivo por lo menos dos años antes de esa fecha, o sea desde el 17 de abril de 1892. La Intendencia General de Puerto Rico decidió en 29 de marzo de 1894 que hasta el 17 de abril de 1894 podían presentarse las solicitudes.

NULIDAD DE VENTA HECHA POR EL INTENDENTE GENERAL DE HACIENDA DE PUERTO RICO—VENTA EN COMPOSICIÓN SOLICITADA DESPUÉS DEL 17 DE ABRIL DE.

1

1894—CULTIVO POR MENOS DE DOS AÑOS ANTERIORES AL 17 DE ABRIL DE 1894.—Es nula la venta en composición de terrenos realengos otorgada por el Intendente General de Hacienda de Puerto Rico cuando la solicitud para ella se hizo después del 17 de abril de 1894 y también cuando los terrenos no tenían en esa fecha dos años de cultivo.

ARTÍCULOS 33 Y 34 DE LA LEY HIPOTECARIA—TERCEROS—VICIO DE NULIDAD QUE NO CONSTA EN EL REGISTRO DE LA PROPIEDAD.—No constando en el registro de la propiedad que la venta en composición de terrenos realengos se solicitó después del 17 de abril de 1894 y que los terrenos no tenían en esa fecha dos años de cultivo, no pueden esos vicios de nulidad perjudicar a un tercer adquirente porque es en el registro y no en otras oficinas donde deben constar claramente los vicios de nulidad para que puedan perjudicar al tercero. El carácter de tercero ha de apreciarse con referencia a las inscripciones y anotaciones.

ARTÍCULO 27 DE LA LEY HIPOTECARIA—CONOCIMIENTO POR EL TERCERO DE LOS VICIOS DE NULIDAD QUE NO CONSTAN EN EL REGISTRO—OPINIÓN DE UN INGENIERO—PRECIO DE LA COMPRA.—Para que el tercero pierda su carácter de tal es necesario que adquiera conociendo los vicios de nulidad o las cargas que pesan sobre la finca, revelados evidentemente por hechos que forzosamente tienen que herir los sentidos o por actos realizados por él. La opinión de un ingeniero respecto a la legalidad del título del vendedor no priva al tercero de su carácter de tal, ni el mayor o menor valor con que una finca aparezca en el registro levanta por sí sólo presunción alguna contra la legalidad del título.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Francisco Soto Gras.*

Abogados del apelado: *Sres. Salvador Mestre, Fiscal,* y *Howard L. Kern, Attorney General.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

El Pueblo de Puerto Rico demandó en reivindicación a don José D. Riera alegando como fundamento de la acción que éste se halla poseyendo sin título legal cierta parcela de tierra radicada en el barrio de Puerta de Tierra de esta ciudad, que pertenece en propiedad al demandante por cesión que de ella le hizo el Gobierno de los Estados Unidos de Norte América, quien la adquirió de España en virtud del Tratado de París firmado por ambas naciones en 10 de diciembre de 1898.

Además de la devolución de la finca pidió del demandado cierta cantidad de dinero por los frutos que había producido.

El demandado contestó esa reclamación negando que El

Pueblo de Puerto Rico ni el Gobierno de los Estados Unidos de América, hayan sido dueños en algún tiempo de la parcela de tierra que se le pide porque, con anterioridad al Tratado de París, España se había desprendido de sus derechos dominicales en dicha finca por la escritura de 27 de septiembre de 1897 por la cual el Intendente General de Hacienda de esta isla, en nombre del Gobierno Español, vendió esa finca a don Manuel J. Gestera y Gestera por precio recibido, la que actualmente pertenece al demandado por título de compraventa inscrito en el Registro de la Propiedad de San Juan, en el que también inscribieron sus adquisiciones el Gobierno de España y los posteriores adquirentes. Negó deber cantidad alguna por frutos y alegó además su condición de tercero, manifestando que adquirió el dominio de persona que en el registro de la propiedad aparecía como dueña de dicho inmueble sin condición ni defecto alguno.

El pleito terminó por sentencia que declara con lugar la demanda en cuanto a la devolución de la finca al demandante y sin lugar en cuanto al pago de la cantidad que se reclamaba, y de esa sentencia apeló el demandado por medio del presente recurso.

La primera cuestión a resolver es si como sostuvo el demandado en su contestación y sostiene ahora en este recurso, el demandante carece de acción para reivindicar por no ser dueño de la finca objeto del litigio.

No niega el apelante que España fué dueña de los terrenos que son objeto de este pleito, pero sostiene que puesto que los había vendido a Gestera en 1897, antes de su guerra con los Estados Unidos de América, declarada en 25 de abril de 1898, no pudo ceder ni cedió la propiedad de esos terrenos al firmar en París el tratado de paz de 10 de diciembre de 1898 por el que hizo cesión de la isla de Puerto Rico y de las propiedades que en ella correspondían a la Corona de España, por lo que los Estados Unidos nunca han sido dueños de ellos ni pudieron cederlos al Pueblo de Puerto Rico, por cuyo motivo éste no puede reivindicarlos.

Si la venta que los funcionarios de España en Puerto Rico hicieron a Gestera en el año de 1897 es válida, entonces tiene razón el apelante, porque el artículo 8º. de dicho Tratado de Paz dispuso que la cesión de la isla a los Estados Unidos no mermaría la propiedad o los derechos que correspondieran con arreglo a las leyes, a los poseedores pacíficos de bienes de toda clase, inclusos los de los individuos particulares, cualquiera que fuera su nacionalidad.

Por el contrario, si el título por el que aparece España desprendiéndose del dominio de esos terrenos no es válido con arreglo a las leyes, entonces España no se había desprendido de su propiedad cuando firmó el Tratado de Paz de París y por tanto por él pasó la propiedad de esos terrenos a los Estados Unidos de América quienes pudieron cederlos y en efecto los cedieron al Pueblo de Puerto Rico, quien como tal dueño puede recobrarlos de quien los posea sin título legal, por la ilegalidad del título de Gestera.

Respecto al dominio de España sobre los terrenos realengos cuyo carácter tenían los que nos ocupan, como no es cuestión que se controvierte ahora nos bastará hacer referencia a los casos de *El Pueblo* v. *Dimas*, 18 D. P. R. 1061, y *El Pueblo* v. *El Municipio de San Juan*, 19 D. P. R. 656.

Así pues, la cuestión fundamental en este pleito es la de si el título de Gestera es válido y le trasmitió por tanto la propiedad de los terrenos que tenía España y que hoy posee el apelante; y aunque éste sostiene que El Pueblo de Puerto Rico, como cesionario de los Estados Unidos, no puede investigar los actos de los funcionarios de España realizados antes de la guerra, sin embargo, correspondiendo por el Tratado de París a los Estados Unidos de América el derecho de propiedad que tenía España en esta isla, cedido luego a El Pueblo de Puerto Rico, es claro que si España podía examinar la legalidad del título otorgado por sus funcionarios a Gestera y anularlo, derecho que nadie negará, pueden también los Estados Unidos como cesionarios de los derechos que España tenía en esta isla, y como cesionario suyo El Pueblo

de Puerto Rico, examinar la validez del título de Gestera aunque para ello tenga que investigar los actos de los funcionarios de España. No parece sostenible que porque no se descubran actos irregulares o equivocados de funcionarios públicos de España hayan de continuar en la posesión de los terrenos que le pertenecieron y cuya propiedad traspasó a los Estados Unidos, personas que los tienen sin derecho para ello. Sentado esto, pasemos a estudiar el título de Gestera.

En 17 de abril de 1884 el Rey de España aprobó el Reglamento para la venta por composición de terrenos realengos en la Isla de Puerto Rico, cuyo artículo 5º. dice así:

"Art. 5º.—Los poseedores de terrenos que careciendo de justo título y no pudiendo alegar el derecho de prescripción establecido en el artículo 2º. de este reglamento, los tengan en la actualidad destinados a cafetales o a cualquier otro cultivo agrario, a los cuales se refiere el párrafo 3º. de la Real Orden de 5 de junio de 1877, podrán adquirir la propiedad de los mismos por composición pagando a la Hacienda el valor que por la tasación correspondiente se asigne al terreno en la época en que indebidamente fué ocupado."

Otras disposiciones del Reglamento determinan la forma y plazo en que habrán de hacerse los pagos: que las peticiones se dirigirán al Intendente General de Hacienda determinando los requisitos que ha de contener, y que a ella corresponde la tramitación de los expedientes y de los incidentes a que den lugar y la resolución a una Junta Superior de Composición y Venta de Realengos, compuesta por los funcionarios que determina: cómo ha de hacerse el deslinde y tasación de los terrenos solicitados y por quién aprobado el expediente, y que el Intendente General de Hacienda o quien le suceda en su cargo y represente en sus funciones, será quien otorgue el título de propiedad cuando se lleve a efecto en esta capital.

En ese reglamento no se fija plazo para presentar la solicitud, para tramitar el expediente ni para otorgar la escritura de venta.

Posteriormente la Reina de España firmó en 1º. de febrero

de 1894 el Decreto que se publicó en la Gaceta de esta Isla el 6 de marzo siguiente y que dice así:

"Artículo Unico.—Se amplía en diez años, a contar desde el 17 de abril de 1884, el plazo para que los poseedores de terrenos realengos en la Isla de Puerto Rico, que los tuvieren cultivados a lo menos de dos años antes del término del mismo, y se hallaren en las demás condiciones a que se refiere el artículo 5°. del Real Decreto de la fecha antes citada, puedan adquirir la propiedad de dichos terrenos por medio de composición con la Hacienda, satisfaciendo su valor con sujeción a lo preceptuado en el artículo 7°. del referido Real Decreto."

Días después, en 29 de marzo, se dictó por el Intendente General la resolución que se insertó en la Gaceta de 3 de abril de 1894, la que dice así:

"Ampliado en diez años por S. M. el Rey (Q. D. G.), el plazo para que los poseedores de terrenos realengos de esta isla puedan adquirirlos por composición con la Hacienda siempre que los tuvieren cultivados a lo menos dos años antes de la terminación de ese plazo que vencerá el 17 de abril del corriente año, ha resuelto el Iltmo. Sr. Intendente de acuerdo con este Centro que hasta las doce de la mañana del indicado día 17 de abril próximo se admitan las solicitudes que con tal motivo se presenten; advirtiéndose que vencido ese plazo, quedarán sin curso todas las solicitudes que pudieran presentarse.

"Y con el fin de que en su día no pueda alegarse ignorancia por parte de los interesados, recomiendo eficazmente a los Sres. Alcaldes que por medio de edictos y cedulones hagan pública esta disposición en los diferentes barrios de sus respectivas jurisdicciones.

"De quedar enterados de esta disposición acusarán recibo los señores alcaldes.

"Puerto Rico, 29 de marzo de 1894. El Administrador Central, Antonio de Olózaga."

Tres años después de esto, en 29 de septiembre de 1897, el Intendente General de Hacienda Pública, interino, en representación de los derechos e intereses del fisco y como jefe del Estado en esta Provincia de Puerto Rico, compareció ante Notario Público con don Manuel J. Gestera y Gestera y

otorgó a éste escritura de venta en composición de los terre-
nos que son objeto de este pleito por precio recibido e ingre-
sado en las arcas del Tesoro.

Esa escritura fué presentada como prueba en el juicio de
este pleito y en ella se hizo constar por el notario con vista
de un expediente que le fué exhibido y que dió fe tener a
la vista, que Gestera acudió a la Intendencia General de Ha-
cienda en escrito de 2 de junio de 1897 solicitando que de
acuerdo con las disposiciones del Reglamento sobre Compo-
sición y Venta de terrenos baldíos vigente en esta isla, se le
concediera la propiedad por composición con el Estado de
una superficie de terreno pantanoso o manglar, que es el que
está en litigio en este pleito, fundándose en haber desecado
y cultivado por su cuenta dicha superficie convirtiéndola en
terreno afirmado y habitable ''hace el espacio de tres años,''
invirtiendo considerables sumas y siendo de notorio beneficio
para la salubridad del barrio.

Los demás hechos que se transcriben de ese expediente
cuyo fin fué el otorgamiento de la ameritada escritura, no
tienen importancia para la resolución de este caso.

El expediente original no fué presentado en el juicio por-
que se justificó que se ha extraviado, pero los hechos que de
él hemos consignado tomándolos de lo relacionado en la es-
critura de venta a Gestera, podemos tomarlos como base para
considerar la cuestión de derecho que de ellos surge porque
constan en un documento suscrito por las partes de este
pleito.

Con lo que hemos expuesto podemos considerar la cues-
tión fundamental de este pleito.

Puesto que el Reglamento de 17 de abril de 1884 para la
composición y venta de terrenos realengos en esta isla no
fijó plazo para que los poseedores de ellos pudieran adqui-
rirlos por composición, lo que en verdad hizo el Real Decreto
de 1°. de febrero de 1894, más que ampliar plazo alguno, fué
fijar un término dentro del cual podía adquirirse la propiedad
en esa forma de terrenos realengos, y de acuerdo con su pre-

cepto ese plazo vencía el 17 de abril de 1894, siendo condición además que los terrenos estuvieran en cultivo por lo menos desde dos años antes de esa fecha, o sea desde el 17 de abril de 1892.

Si ese Real Decreto se hubiera interpretado estrictamente pudiera haberse exigido que para el día 17 de abril de 1894 debiera haberse adquirido la propiedad por composición, pero sin duda teniéndose en cuenta por la Intendencia General que dicho Decreto se había publicado en esta isla el 6 de marzo de 1894 y que de acuerdo con el Reglamento a que hacía referencia debían practicarse ciertos trámites después de presentada la solicitud para adquirir por composición, difíciles de llevar a cabo en tan corto tiempo, decidió, creemos que acertadamente, que las peticiones se presentaran hasta el día 17 de abril de 1894. Así pues, podía presentarse la solicitud antes de expirar el plazo fijado en dicho Real Decreto y, sin embargo, por la posterior tramitación de la solicitud no otorgarse la propiedad sino en fecha más o menos remota, no limitada por disposición legal alguna.

Teniendo en cuenta esto habremos de decidir que cuando Gestera presentó en 2 de junio de 1897 su solicitud para la adquisición de las tierras que ahora se reclaman, había vencido con exceso el plazo que fijó el Real Decreto citado para que pudiera concederse la propiedad a los poseedores de terrenos realengos y por ese motivo el Intendente de Hacienda carecía de autoridad legal para conceder la propiedad en composición, pedida después de esa fecha, defecto que vicia de nulidad el título de Gestera.

Tampoco estaba facultado el Intendente de Hacienda de esta isla para vender en composición terrenos del Estado que no estuvieran cultivados a lo menos desde el 17 de abril de 1892; y de la solicitud de Gestera aparece que en esa fecha no estaban los terrenos en cultivo ya que en su solicitud de 2 de junio de 1897 afirmó que estaban en cultivo desde ''hace tres años'', o sea desde junio de 1894, fecha posterior a la exigida por dicho Real Decreto como condición para que se

pudieran vender terrenos en composición. La falta de cumplimiento de esa condición anulaba también el título de Gestera.

¿Pero esta declaración de nulidad perjudica al apelante que compró de quien en el Registro de la Propiedad aparecía como dueño e inscribió su título?

Según los artículos 33 y 34 de la Ley Hipotecaria la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, no obstante lo cual los actos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del registro.

Como Riera es un tercero con respecto al contrato celebrado por el Intendente interino de Hacienda en el año 1897 y don Manuel Gestera, pues no intervino en él, debemos considerar lo que dice respecto de ese contrato el registro de la propiedad para ver si del mismo resulta claramente el vicio de nulidad de que adolece el título de Gestera pues si es así esa nulidad habrá de afectarle.

El asiento de inscripción del título de Gestera según aparece en el registro de la propiedad, en lo pertinente, dice así:

" 　※　※　※　※　※　※　※

"El Estado es dueño de la finca de este número por derecho de conquista, según resulta de la referida primera inscripción en donde tiene acreditada la posesión; y como dueño representado por el Iltmo. Sr. Intendente General de Hacienda, don Alejandro Infiesta García, la vende mediante composición según expediente que al efecto se tramitó y fué aprobado por el Excmo. Sr. Gobernador General, a don Manuel Gestera, por precio de tasación, o sea 266 pesos 2 centavos, que el vendedor en la representación que ostenta confiesa ingresados en las arcas reales antes del acto de la escritura objeto de esta resolución. El mismo don Manuel J. Gestera y Gestera, mayor de edad, propietario, casado y vecino de esta capital, inscribe la finca de este número por título de compraventa en composición sin condiciones es-

peciales y sin perjuicio de tercero. Todo lo referido consta del registro y de la primera copia de una escritura otorgada en esta Capital a 29 de septiembre último ante el notario don Mauricio Guerra.

"   *   *   *   *   *   *   *

"Firmo la presente en San Juan de Puerto Rico a 12 de diciembre de 1897. José Ignacio Beyens."

Como puede verse por la inscripción transcrita, de ella no resulta la causa de nulidad de que adolece el título de Gestera pues no da noticia al tercer adquirente de que la petición de venta en composición se hizo por Gestera después del 17 de abril de 1894, que era el plazo fijado por el Real Decreto de ese año para que los poseedores de terrenos realengos pudieran adquirirlos por composición; ni de ella resulta tampoco el otro vicio de nulidad de no haber estado los terrenos en cultivo a lo menos desde el 17 de abril de 1892 que era condición para que dicha clase de venta pudiera hacerse.

Sostiene sin embargo el demandante apelado que del registro resulta claramente la nulidad del título otorgado a Gestera porque no solamente consta en él que las tierras se formaron por desecación de manglares sino también porque Gestera las obtuvo por compra en composición en el año 1897, cuando en esta fecha no estaba autorizada esa clase de venta.

No debió estar muy seguro el demandante acerca de este punto cuando no se limitó para probar el vicio de nulidad a presentar lo que aparecía del registro con referencia a la finca en litigio y acudió a otros medios de prueba; pero de todos modos ni en la primera inscripción a favor del Estado Español, ni en la segunda a favor de Gestera, ni en las posteriores a ésta y anteriores a la de Riera consta que la finca se formara por desecación de manglares; y aunque así constara esto no constituiría vicio de nulidad pues tal clase de tierras podían ser vendidas de acuerdo con el Reglamento y el Real Decreto de 1894 mencionados. La cita que se hace del caso de *El Pueblo* v. *Dimas, supra,* no tiene aplicación en este particular puesto que lo que entonces se declaró fué que

las tierras obtenidas por desecación de manglares pertenecían al Estado a menos que las enajenara válidamente.

El hecho de que conste en el registro que la escritura de compraventa a favor de Gestera fué otorgada en el año 1897 no demuestra por sí solo vicio alguno de nulidad, pues el Real Decreto de 1894 no fijó plazo alguno para otorgar la escritura de venta. Ni podía otorgarse la escritura de trasmisión de la propiedad hasta una fecha indeterminada, posterior al 17 de abril de 1894 pues pudiendo solicitarse la propiedad en composición hasta ese día y siendo necesaria cierta tramitación posterior a la solicitud en cumplimiento del Real Decreto de 1894 y del Reglamento de 1884, no teniendo dichos trámites tiempo fijado para ultimarlos, la fecha del documento tenía que ser más o menos posterior a dicho día y por tanto el que la escritura de Gestera tuviera la fecha de 1897 no demuestra en sí vicio alguno de nulidad.

Pero se sostiene que al que adquiere de quien en el registro aparece como dueño no le basta con examinar los libros de esa oficina para ver si de ellos resulta claramente vicio alguno de nulidad sino que si no quiere verse privado de los beneficios que a los terceros concede el artículo 34 de la Ley Hipotecaria deberá por los datos que el registro arroje, acudir a otras oficinas a examinar los documentos que menciona el registro para conocer por ellos si existe vicio de nulidad.

Entendemos que el artículo 34 que consideramos es claro y terminante en el sentido de que es en el registro donde debe aparecer el vicio de nulidad, siendo necesario que de él aparezca claramente el mismo para que perjudique a tercero. La ley lo dice así expresamente y, por tanto, so pena de violentarla y de destruir el fin que persiguió el legislador al consignar ese precepto, no puede sostenerse que el vicio de nulidad que no consta en el registro perjudique a tercero, porque él pudo conocerlo si hubiera ido a examinar en otras oficinas los documentos mencionados en el registro. Sería también agregar a la ley mandatos que no tiene. El legislador quiso que sólo la nulidad que apareciese del registro fuera

la que perjudicara a tercero, y si hubiera querido que tuviera
igual efecto la que apareciese fuera del registro pero en do-
cumentos en él mencionados, lo hubiera dicho.

Pero es que la ley no quiso esto último, y se comprende
fácilmente su razón recordando el fin primordial perseguido
por el legislador al decretar la Ley Hipotecaria, que fué el
de facilitar el crédito territorial, y a cuyo fin garantizó a
los terceros que no serían perjudicados por los vicios de nu-
lidad que no constasen claramente en el registro. Si, contra
lo que dice la ley, no basta a los terceros lo que aparezca
del registro, entonces se habrá destruído el crédito territo-
rial pues las personas que quieran contratar con propiedad
inmueble, si quieren estar garantidas contra vicios de nulidad
de los títulos inscritos del dueño y sus antecesores en dere-
cho, estarán obligados a hacer una peregrinación de oficina
en oficina, y de pueblo en pueblo, por lejanos y extraños que
sean, en busca y examen de los documentos, expedientes y
actuaciones de cualquier·clase que estén mencionados en el
registro. Si la ley hubiera tenido este propósito, entonces le
hubiera bastado con no haber escrito el artículo 34 que co-
mentamos.

Igual criterio hemos sostenido en cuestiones análogas y
así en el caso de *Méndez* v. *Celis,* 20 D. P. R. 532, declaramos
que por exigir el Código Civil que la causa de la deshere-
dación se haga constar en el testamento, no es suficiente que
en él se haga referencia a las causas expresadas en una de-
manda de divorcio presentada en determinado tribunal; en
el de *Fantauzzi* v. *Vázquez,* 22 D. P. R. 728, dijimos que
cuando la ley impone a una persona fiadora el deber de se-
ñalar ciertos bienes de su fiado el señalamiento deberá ha-
cerse directamente y no mediante referencia a algún otro do-
cumento o pleito; en el de *Sánchez* v. *Hartzell,* 26 D. P.
R. 684, sostuvimos que aun cuando en el registro se
hizo constar que una venta se verificaba sin perjuicio de los
derechos que pudieran tener ciertas personas, como no se de-
terminaban esos derechos ni si se referían al dominio o a

cualquier otro derecho real, no podían considerarse esas palabras por sí solas como determinantes de la existencia jurídica de una mención, y que si existía algún derecho no se inscribió de un modo específico, como requiere la ley, en el registro; y en el caso de *Vélez* v. *Camacho,* 8 D. P. R. 37, establecimos que a los efectos de la Ley Hipotecaria, el carácter de tercero ha de apreciarse con referencia a las inscripciones y anotaciones.

En la jurisprudencia española encontramos casos bastante análogos al presente.

Según la resolución de la Dirección General de los Registros de España de 4 de febrero de 1893, Lorenzo Lidueña compró en subasta pública a la Hacienda una finca pero luego la administración anuló ese título, entre otras razones, por haber existido en la publicación de edictos el defecto de haberse fijado éstos con cinco días de anticipación al remate. Lidueña inscribió su título en el registro y al pedirse la cancelación de su inscripción en virtud de la declaración de nulidad mencionada, la negó el registrador fundándose en que la finca estaba inscrita a favor de un tercero quien la adquirió sin que los motivos en que se basa la nulidad aparecieran de las mismas inscripciones. En el recurso establecido contra esa resolución se argüía que en la escritura de venta a Lidueña y por tanto en el registro debía constar que la enajenación se anunció en el Boletín de 15 de junio de 1881 para el 15 de julio siguiente, día en que debía tener lugar la subasta lo que probaba que en Berja no pudo publicarse el anuncio hasta el día en que allí se recibió el Boletín y por tanto que resultaba el vicio de nulidad de la venta por no tener el anuncio la publicidad legal por el tiempo mínimo de treinta días; y habiendo pretendido que copia de esa escritura se agregase al expediente y también certificación literal de la inscripción practicada en su virtud, fué negada la solicitud en cuanto a que la escritura se agregara al expediente porque en él obraban los antecedentes necesarios para la resolución del recurso, pero se pidió al registrador la certifica-

ción literal de la inscripción y en ella no constaba que la enajenación se anunciara en el Boletín de 15 de junio de 1881, para el 15 de julio siguiente. Con tales antecedentes se sostuvo la negativa de cancelación del registrador por el fundamento de que no resultaba del registro la causa que motivó la anulación de la venta; que es criterio estrictamente legal por el interés de tercero "que sólo deben consultar los libros del registro al contratar sobre la propiedad inmueble" y que aunque las causas de nulidad constaren en el registro no pueden perjudicar a tercero pues "es preciso que resulten claramente del mismo registro."

En 13 de mayo de 1903, 95 Jur. Civ. 778, el Tribunal Supremo de España dictó sentencia en la cual se consignó que como consecuencia de un expediente administrativo de apremio fué vendida en pública subasta una mina, que el que la compró la enajenó luego a otra persona y que después de todas esas inscripciones declarada la nulidad de la venta por defectos existentes en el expediente de venta, se entabló pleito para que se cancelaran, entre otras razones porque "el que viendo en el registro títulos anteriores no examina la legitimidad de las adquisiciones que entre los mismos y el suyo pueda haber, debe imputarse la omisión a sí mismo porque la ley lo protege únicamente contra lo que no puede serle conocido." Con tales antecedentes el tribunal declaró "que según los preceptos claros y terminantes de los artículos 34, 36 y 37 de la Ley Hipotecaria, los actos o contratos que se ejecuten por persona que en el registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, aunque después se resuelva el derecho del otorgante por causas que no resulten claramente del mismo registro, ni pueden tampoco prevalecer contra terceros aquellas acciones rescisorias o resolutorias que deban su origen a causas que no consten explícitamente en aquél"; y también declaró que en el pleito "en que por tener inscrito el vendedor su derecho sin expresión de causa alguna que pudiera producir resolución del mismo, no necesita el comprador ninguna otra garantía para la

seguridad de su adquisición." En la sentencia de 16 de noviembre de 1910, 119 Jur. Civ. 338, se declara que " * * * los elementos que se citan no demuestran que en el registro de la propiedad constaran los extremos que se mencionan, y los adquirentes de las fincas no estaban obli- gados a tener en cuenta hecho que no figurase en la inscrip- ción y de los que no se revela tuvieran conocimiento."

Las siguientes sentencias del Tribunal Supremo de Es- paña y resoluciones de la Dirección General de los Registros, sostienen también el principio de que al tercero con título inscrito sólo le perjudican las causas de nulidad o de resci- sión que claramente consten en el mismo registro. Sentencias de 3 de julio de 1906; 105 J. C. 28; 3 de marzo y 4 de di- ciembre de 1909; 104 y 116 J. C. 18 y 595 respectivamente; y 8 de octubre de 1910; 119 J. C. 62. Resoluciones de 8 de julio y 20 de septiembre de 1911.

En el caso de *Castelló et al.* v. *Pérez et al.*, 23 D. P. R. 763, el abogado de la parte ejecutante en un procedimiento judicial compró en la subasta decretada en él cierta finca, y pedida por ese motivo la nulidad de la venta después de haber pasado la finca a tercera persona e inscrito su título, se de- claró que aunque en el pleito que terminó con esa venta el comprador era abogado de los ejecutantes, había comprado para su cliente, pero que aunque hubiera comprado para sí no podría esa nulidad perjudicar al tercer adquirente por- que en el registro no constaba que dicha persona fuera abo- gado de los ejecutantes en ese procedimiento, aunque cons- taba que lo era en otro de las mismas personas.

En el caso de *Fernández et al.* v. *Velázquez,* 17 D. P. R. 757, que versó sobre reivindicación de fincas vendidas en su- basta judicial en un pleito que se alegó luego contener vicios de nulidad, estando las fincas al tiempo de la demanda en poder de tercera persona, se suscitó la misma cuestión que ahora nos ocupa al alegar los apelantes "que el demandado debió haber investigado la historia de su título más allá de los límites del registro, ya que el registro indicaba que una

de las adquisiciones se había verificado como consecuencia de
un pleito.'' Nuestra resolución fué que puesto que el artículo
18 de la Ley Hipotecaria impone a los registradores el deber
de calificar bajo su responsabilidad la legalidad de las escri-
turas y la capacidad de los otorgantes, el demandado pudo
confiar en la calificación del registrador. A esto agregaremos
ahora que los registros están encomendados a abogados ca-
paces que obtienen sus cargos por oposición y que además
prestan fianzas para responder del buen desempeño de su
cargo.

En resumen, pues, como es en el registro de la propiedad,
y no en otras oficinas, donde deben constar claramente las
causas de nulidad o de rescisión de los actos o contratos para
que perjudiquen a un tercer adquirente con título inscrito, y
como en este caso el vicio de nulidad del título de Gestera
no consta del mismo registro, el apelante Riera está prote-
gido por el artículo 34 de Ley Hipotecaria contra ese vicio
de nulidad.

El artículo 27 de Ley Hipotecaria dice que para los efectos
de dicha ley se considera como tercero a aquel que no haya
intervenido en el acto o contrato inscrito; pero como repe-
tidas sentencias del Tribunal Supremo de España y también
de este Tribunal han declarado que no puede considerarse
como tercero al que adquiere conociendo los vicios de nulidad
o las cargas que pesan sobre la finca que adquiere, conoci-
miento que ha de revelarse evidentemente por hechos que for-
zosamente tienen que herir los sentidos o por actos realizados
por el supuesto tercero, según declaró la sentencia del Tri-
bunal Supremo de España, de 23 de marzo de 1906, se sos-
tiene por la parte apelada en este pleito que a Riera no
puede considerársele como tercero porque en la fecha de la
adquisición conocía la opinión del ingeniero don Armando Mo-
rales respecto a la legalidad del título de Gestera.

Podríamos prescindir de este argumento desde el momento
en que la propia parte apelada reconoce en su alegato que no
se ha podido precisar si esa conversación de Morales con

Riera fué antes de la compra hecha por éste a Gestera, pero queremos decir que la opinión *legal* de un ingeniero no puede nunca ser tenida en cuenta para apreciar si un título ha sido otorgado de acuerdo o con infracción de las leyes.

También quiere decirse que Riera pierde su condición de tercero porque tratando de pagar mucho dinero por la finca que Gestera adquirió por una pequeña cantidad, en vista de este hecho debió consultar la legalidad del título de Gestera y acudir a las oficinas públicas en busca de datos. El mayor o menor valor con que una finca aparezca en el registro no levanta por sí sólo presunción alguna en contra de la legalidad del título.

Por las razones expuestas debe revocarse la sentencia apelada y dictarse otra declarando sin lugar la demanda sin especial condena de costas.

> *Revocada la sentencia apelada y dictada otra*
> *declarando sin lugar la demanda sin espe-*
> *cial condenación de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Wolf.

Los Jueces Asociados Sres. del Toro y Hutchison firmaron conforme con la sentencia.