Dionisio Trigo Marcos, demandante y apelante, *v.* El Pueblo de Puerto Rico, demandado y apelado.

Núm. 6614.—*Sometido:* Abril 21, 1936. *Resuelto:* Abril 7, 1937.

*Henry G. Molina* y *D. Trigo,* abogados del apelante; *Hon. Procurador General B. Fernández García* y *Harry B. Llenza, Oficial Jurídico, División de Hogares Seguros,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El demandante apelante alegó ser dueño en pleno dominio de una finca rústica de 746.40 cuerdas, ubicada dentro del término municipal de Patillas, e interpuso demanda de reivindicación en contra de El Pueblo de Puerto Rico.

Alega el demandante que adquirió el inmueble por compra que del mismo hiciera a Carmen Brac Brignoni, Higinio Allende y su esposa Isabel Caraballo, por escritura que fué inscrita en el registro de la propiedad; que sus antecesores en título adquirieron el inmueble por compra al Banco Territorial y Agrícola de Puerto Rico, que también fué inscrita; que el citado banco vino a ser dueño de la finca por haberle sido adjudicada en la subasta pública celebrada dentro del procedimiento ejecutivo seguido contra don Juan Pablo Giordani y Semidey, en cobro de hipoteca constituída por éste a favor del banco ejecutante; y que el citado Giordani y Semidey adquirió la finca por venta que le hiciera don Eduardo Cervoni y Mari, quien la adquirió a su vez por cesión que le hizo la Junta Superior de Composición y Venta de Terrenos Realengos de la Isla de Puerto Rico, en 1°. de marzo de 1875, habiendo sido dicha cesión debidamente inscrita en el registro correspondiente. Se alega además, que el compare-

ciente y los anteriores dueños de la finca la poseyeron quieta, pública y pacíficamente y sin interrupción, de buena fe y con justo título, desde el año 1875 hasta el mes de octubre de 1929; que en esta última fecha el demandante fué desposeído, en contra de su expresa voluntad y sin su consentimiento, por el demandado, el que no tiene derecho alguno de dominio sobre la finca; y que el demandado se encuentra actualmente en posesión del inmueble, privando al demandante del goce y disfrute de su propiedad. Se pide sentencia por la que se declare que el demandante es el único dueño de la finca, de la que debe ser puesto en posesión.

La contestación de El Pueblo de Puerto Rico admite el otorgamiento de los diversos traspasos de la finca, que terminaron con el que hiciera la señora Brac y el señor Allende al demandante apelante, y que todos dichos traspasos aparecen inscritos en el registro; pero niega específicamente que don Eduardo Cervoni y Mari adquiriera la finca *por cesión* de la ya mencionada Junta Superior, y que se haya inscrito cesión alguna a favor de dicho señor.

Alega la representación del gobierno demandado que la finca en cuestión se formó por agrupación de cinco predios, cuatro de cien cuerdas cada uno y otro de doscientas cuerdas, pertenecientes todos ellos a El Pueblo de Puerto Rico, los que fueron concedidos condicionalmente por la Junta Superior de Composición y Venta de Terrenos Realengos, a diversas personas, en el año 1875, viniendo después de varios traspasos a manos del demandante apelante; que todas las concesiones condicionales hechas por la referida Junta fueron inscritas en el registro; que en todas y cada una de dichas concesiones se hizo constar la condición expresa de que la concesión quedaría revocada y los terrenos concedidos revertirían al Estado, si los respectivos concesionarios no tenían bajo cultivo, dentro del término de un año, la décima parte, dentro de cuatro años la cuarta y dentro de diez años la mitad del correspondiente predio; que la referida condición se hizo constar expresamente en el registro de cada finca.

al inscribirse las concesiones; y por último, que en el año 1895, la Junta Superior que otorgó dichas concesiones revocó y anuló todas y cada una de ellas, por no haber cumplido los concesionarios las condiciones que les habían sido impuestas.

Niega la parte demandada que el demandante o sus antecesores hayan poseído la finca; que el gobierno les haya privado de la posesión del inmueble; y que el demandante sea dueño o tenga título alguno que le dé derecho a poseer la finca en litigio. Y alega que ni el demandante ni sus antecesores tienen, ni han tenido nunca, título alguno, pues al adquirir la finca, todos y cada uno de ellos tenían conocimiento no sólo de la condición inscrita en el registro, sino también del hecho de que dichas concesiones habían sido revocadas y anuladas por la Junta Superior; que en el año 1896 el Alcalde y Secretario del Municipio de Patillas, por orden de la Junta Superior, se incautaron de los predios concedidos; que la Corona de España los estuvo poseyendo hasta 1898, fecha en que los cedió al Gobierno de Estados Unidos; y que éste los cedió al Pueblo de Puerto Rico en julio 1º. de 1902, por ley del Congreso, estando desde esa fecha el demandado en posesión quieta, pública y pacífica del inmueble, sin interrupción alguna, con justo título y de buena fe.

En su contrademanda, El Pueblo alega: que la hipoteca constituída por Juan P. Giordani, a favor del Banco Territorial y Agrícola de Puerto Rico, en 13 de abril de 1896, es nula por haber sido otorgada después de la revocación y anulación de las concesiones y de la incautación de los predios por órdenes de la Junta Superior de fechas 26 de julio y agosto 1º. de 1895, y además, por la razón de que Juan P. Giordani y Semidey nunca adquirió la libre disposición de la finca, ni tuvo título alguno sobre la misma; y que todos los traspasos hechos con posterioridad a la referida hipoteca, y las inscripciones de los mismos practicadas en el registro son nulos y sin valor o efecto legal, por haber sido hechos y

practicados después de haber revertido la finca a la Corona de España, como consecuencia del incumplimiento de las condiciones expresas de las concesiones. Y pide que se declare que El Pueblo de Puerto Rico es el único dueño de la finca en controversia y que se ordene la cancelación de todas las inscripciones de gravámenes constituídos o traspasos hechos con posterioridad a la fecha en que se decretó la anulación de las concesiones y la reversión de los terrenos al Estado.

La corte inferior dictó sentencia de acuerdo con las contenciones de la parte demandada, y contra esa sentencia se ha interpuesto el presente recurso.

De la prueba documental que aparece en el récord de este caso, resultan claramente establecidos, como hechos materiales e indiscutibles, los que pasamos a consignar:

1. Que don Eduardo Cervoni y Mari, después de haber adquirido de los concesionarios originales los cinco predios de terreno, sujetos a la condición ya mencionada, los agrupó para formar una sola finca de 600 cuerdas; que por escritura de 8 de junio de 1892 dicho señor Cervoni hizo cesión, renuncia y traspaso a favor de Antonio Giordani y Semidey, *de las acciones y derechos que le corresponden y pueden corresponder* en la finca resultante de la agrupación, subrogando en su mismo lugar y derecho al cesionario Giordani, y haciendo constar *que le confiere poder bastante firme e irrevocable para que en la vía y forma correspondiente practique cuantos actos y diligencias fueren menester hasta conseguir del Gobierno o de la Intendencia General de Hacienda la libre disposición de las seiscientas cuerdas de terreno de que se ha hecho referencia, y si lo consiguiere en todo o en parte dispondrá de ella como cosa propia;* y que en dicha escritura se estipuló que el cedente Sr. Cervoni no quedaba obligado a la evicción ni a saneamiento ni a ningún género de responsabilidades y que la cesión se hacía *a riesgo y ventura y sin ulterior responsabilidad, aceptando el cesionario las consecuencias de ella en la forma en que queda hecha.*

2. Por escritura de 4 de mayo de 1895 don Antonio Giordani y Semidey declaró que la adquisición de la finca de 600 cuerdas fué hecha para beneficio de don Juan Pablo Giordani y Semidey, y que *siendo necesario para más confirmar en favor de dicho señor los derechos de propiedad, dominio y señoría que sobre*

*dicha finca le corresponden,* le otorga venta real de la finca; e hizo constar que habiendo practicado una mensura de la finca ésta resultó tener una cabida de 746.40 cuerdas. En la inscripción de este traspaso (folio 19 vuelto, Tomo 7 de Patillas, inscripción 2 a.) el Registrador hace constar que ''Don Juan Pablo Giordani y Semidey inscribe *el dominio* de esta finca en virtud de dichos títulos''; pero en el cuerpo de la inscripción se hace referencia repetidas veces a la escritura de 8 de junio de 1892, que motivó la inscripción primera de la finca resultante de la agrupación, en cuya inscripción (folio 18 del Tomo 7 de Patillas) se hace constar que Don Antonio Giordani y Semidey *inscribe su título de cesión con las condiciones dichas.*

3. Que en todas y cada una de las inscripciones primeras de los cinco predios de terreno que fueron agrupados para formar la finca envuelta en este litigio, se hizo constar que la concesión del terreno se hizo *bajo la condición indispensable de la revocación de esta gracia y reversión de aquél al Estado, si en el preciso término de un año no tiene cultivada la décima parte de él, en el de cuatro años la cuarta y en el de diez la mitad a beneficio de la agricultura.*

4. Que en 14 de mayo de 1896, por orden de la Administración Central de Contribuciones y Rentas de agosto 14, 1895, y marzo 30, 1896, se procedió a la incautación de dos de los predios de 100 cuerdas por no haberse cumplido la condición bajo la cual se hicieron las diversas concesiones; y estando ya dichos predios agrupados y en posesión de don Juan P. Giordani, fueron depositados en dicho señor Giordani, quien los aceptó con todas las responsabilidades de los depósitos.

5. Que después de haberse decretado la incautación de los terrenos por el Estado, y de haberlos recibido en calidad de depósito, el Sr. Juan P. Giordani los hipotecó al Banco Territorial y Agrícola, en garantía de un préstamo, por escritura de fecha 13 de abril de 1896.

6. Que la Junta Superior celebró en 19 de septiembre de 1896 una sesión en la que se dió cuenta con siete expedientes de concesiones hechas a Francisco Cervoni, Juan B. Massari, Juan Rivera y Juan P. Giordani, por 800 cuerdas de terreno, las que solicitó adquirir el Sr. Juan P. Giordani en composición con la Hacienda. En el expediente (*exhibit* 9 del demandado) se hace constar que el citado Juan P. Giordani *se encontraba en posesión de los terrenos cuando se llevó a efecto la incautación de los mismos y fué nombrado su depositario;* y que el expre-

sado carácter de depositario no modificó legalmente su estado posesorio anterior de que se deriva su derecho a la composición por él solicitada.

Es un hecho admitido por ambas partes, que las resoluciones o acuerdos de la Junta Superior, decretando la caducidad de las concesiones y la reversión de los terrenos al Estado, no aparecen inscritos en el registro de la propiedad. Al ser ofrecidas en evidencia las certificaciones de los referidos acuerdos, expedidas por el Comisionado del Interior, el demandante se opuso a su admisión, primero, por no aparecer inscritas en el registro y no ser por lo tanto admisibles en perjuicio del demandante, quien alega ser un tercero; segundo, por tener dichas certificaciones el carácter de declaraciones para beneficio propio (*self-serving evidence.*) toda vez que el demandado es El Pueblo de Puerto Rico y se trata de un asunto que está bajo la jurisdicción del Departamento del Interior, pudiendo el Comisionado del Interior sacar la certificación de lo que le interese y traerla al tribunal; y tercero, porque han debido traerse los expedientes originales. Las certificaciones fueron admitidas en evidencia y se anotó la excepción del demandante. Los dos últimos motivos de objeción fueron subsanados durante la vista del caso. De la transcripción de la evidencia (págs. 53 y 54) aparece que el demandado presentó ante la corte los expedientes originales y los puso a disposición del demandante para cualquier objeto. Y el demandante no sólo no se aprovechó de la oportunidad que se le ofrecía para confrontar las certificaciones con los originales y descubrir cualquier disparidad que pudiese existir, sino que renunció a ella, manifestando que no quería que se entendiese ''que nosotros queremos sugerir siquiera que estas copias no son exactas.''

La única cuestión legal que debemos resolver es si el demandante Dionisio Trigo ha adquirido en algún momento el pleno dominio del inmueble que trata de reivindicar y por tanto el derecho a una sentencia que le ponga en la posesión y disfrute del mismo; o si por el contrario, es al Pueblo de

Puerto Rico al que corresponde el derecho a permanecer en la posesión que ya tiene, por no haber trasmitido nunca a persona alguna sus derechos dominicales sobre el inmueble en cuestión.

▇ ⃰ Señala el demandante como error de la corte sentenciadora, el haber resuelto que El Pueblo de Puerto Rico o su antecesor, la Corona de España, había readquirido, *en perjuicio de tercero,* la finca en controversia en virtud de las resoluciones de la Junta Superior de Composición y Venta de Terrenos Realengos.

El demandante no alegó específicamente en su demanda su condición de tercero, ni tampoco lo hizo, como pudo haberlo hecho, formulando una contestación a la contrademanda formulada por El Pueblo de Puerto Rico, en la que se alegaba la anulación de las concesiones. La cuestión ha sido levantada por primera vez en el alegato sometido en apoyo del presente recurso de apelación.

Esta corte ha resuelto ya que en una acción reivindicatoria las defensas de prescripción y de tercero deben ser específicas y no pueden establecerse por primera vez en apelación. Véanse: *Sucesión Torres Negrón* v. *Torres et al.,* 29 D.P.R. 909, 911; *Hernández* v. *Hernández,* 31 D.P.R. 678.

▇ Pasando por alto el defecto técnico de no haber hecho alegación alguna de su condición de tercero, veamos ahora si el demandante es un tercero, y en caso de que lo fuere, si tuvo aviso bastante y suficiente por las constancias del registro de la propiedad de que doña Carmen Brac Brignoni y los esposos Allende no le trasmitieron ni podían trasmitirle el dominio del inmueble en controversia.

Nuestra Ley Hipotecaria dispone:

"Art. 27.. Para los efectos de esta ley se considera como tercero aquél que no haya intervenido en el acto o contrato inscrito.

"

"Art. 33. La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes.

---

* NOTA: En relación con la cuestión que aquí se considera y resuelve, véase la página 232 *et seq.*

"Art. 34. No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten y otorguen por persona que en el Registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule, o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro."

Es indudable que el demandante no fué parte ni intervino en manera alguna en los actos o contratos inscritos con anterioridad a la fecha del otorgamiento de la escritura de venta a su favor. Pero en la fecha de ese otorgamiento, en 22 de enero de 1918, el registro de la propiedad contenía las siguientes constancias:

A. En la inscripción primera de cada uno de los cuatro predios de cien cuerdas, así como en la del predio de doscientas cuerdas se hizo constar que la finca había sido adquirida por concesión de la Junta Superior, hecha con la condición de revocación y reversión al Estado, si en los términos indicados en el título no se hicieren las plantaciones convenidas para beneficio de la agri- · cultura.

B. En la inscripción de la agrupación de los cinco predios hecha por don Eduardo Cervoni y Mari y de la venta hecha por éste a don Antonio Giordani y Semidey, se hizo constar:

"Segunda.—El cedente don Eduardo Cervoni subroga en su mismo lugar y derecho al cesionario señor Giordani y le confiere poder bastante firme e irrevocable para que en la vía y forma correspondiente practique cuantos actos y diligencias fueren menester hasta conseguir del Gobierno o de la Intendencia General de Hacienda la libre disposición de las seiscientas cuerdas de terreno de que se ha hecho referencia y si lo consiguiere en todo o en parte dispondrá de ellas como cosa propia. Tercera.—Es condición esencial de esta cesión que el cedente señor Cervoni no queda obligado a la evicción ni saneamiento ni a ningún género de responsabilidad, pues el cesionario señor Giordani no tendrá derecho a exigir responsabilidad alguna del señor Cervoni ni a repetir contra él bajo ningún concepto por virtud de esta cesión por haber sido así convenido. De modo que el señor Cervoni sólo queda obligado a la firmeza de esta escritura y no a ninguna otra cosa, haciendo por tanto esta cesión a riesgo y ventura y sin

ulterior responsabilidad, aceptando el cesionario las consecuencias de ella en la forma en que queda hecha.''

C. Al inscribirse la escritura por la que don Antonio Giordani y Semidey traspasó la finca a don Juan P. Giordani y Semidey, por ser éste el verdadero dueño, se dijo en el Registro:

> ''. . . y que puesto que la repetida escritura de ocho de junio de mil ochocientos noventa y dos no fué aceptada por el compareciente Don Antonio Giordani y Semidey para sí propio, sino por encargo de Don Juan Pablo Giordani Semidey, verdadero dueño de dicha finca, claro es que éste aceptará el presente otorgamiento con entera referencia al anterior muy repetido en las mismas condiciones en que aparece redactado y sin responsabilidades de especie alguna para él, Don Antonio Giordani y Semidey. Quinta.—El compareciente Don Juan Pablo Giordani y Semidey bien impuesto de lo escriturado, dijo: que lo acepta en todos sus extremos en la forma y detalles en que está redactado por ser la verdad de lo ocurrido y por tanto lo procedente.''

Las mencionadas inscripciones del registro de la Propiedad, que según admite el demandante son las únicas que le obligan, contienen sin duda alguna datos bastantes y suficientes para informar y avisar al Banco Territorial y Agrícola, a sus cesionarios y al demandante que ni los concesionarios originales, ni Juan P. Giordani adquirieron el dominio o libre disposición de los terrenos por virtud de las concesiones de la Junta Superior de Terrenos Realengos, ni adquirieron tales derechos dominicales con posterioridad por acto alguno del Estado, que por los términos claros y precisos de la concesión sólo había trasmitido a los concesionarios el derecho a conseguirlos mediante el cumplimiento de las condiciones a que hemos hecho referencia. Y es evidente que así lo entendió don Eduardo Cervoni y Mari, cuando al traspasar la finca al señor Giordani se limitó a hacerle una subrogación o cesión de derechos y acciones, acompañada de un poder para que el cesionario pudiese continuar practicando las gestiones que fueren menester hasta conseguir del Estado *la libre disposición* de las 600 cuerdas de terreno. Por esas

palabras el cedente informó expresamente al cesionario, que él, el cedente, no tenía el dominio, o sea la libre disposición del inmueble. Y para hacer más clara su posición legal, el cedente hizo constar que no quedaba obligado a saneamiento en caso de evicción, ni a ulteriores responsabilidades y que la cesión se hacía *a riesgo y ventura* del cesionario. Y todas esas condiciones fueron aceptadas por Juan P. Giordani, el deudor hipotecario del Banco Territorial y Agrícola.

Siendo el estado del Registro en la fecha en que Giordani hipotecó el inmueble al Banco, el que hemos descrito, no vemos cómo Giordani, que no tenía el dominio o libre disposición del inmueble, pudo hipotecar lo que no tenía. Lo único que hubiera podido hipotecar Giordani era lo mismo que había adquirido de Cervoni, o sea los derechos que éste pudiera tener para reclamar y conseguir del Gobierno la libre disposición de la finca. Y los compradores posteriores a la ejecución de la hipoteca no pudieron adquirir el dominio o libre disposición del inmueble, pues la escritura de venta otorgada después de la subasta sólo podía trasmitir al comprador los derechos que según el Registro correspondían al deudor hipotecario. Y ya hemos visto que éste no tenía título de dominio, ni tampoco la libre disposición del inmueble. Está ya sentado por resolución de este Tribunal Supremo, que si el título por el cual España se desprendió de terrenos realengos no es válido para trasmitir la propiedad con arreglo a las leyes, El Pueblo de Puerto Rico, como cesionario de todas las propiedades y derechos de la Corona de España, puede recobrar esos terrenos de quien los posea sin título legal, por ilegalidad del título del concesionario original. Véase: *El Pueblo* v. *Riera,* 27 D.P.R. 1, 4.

Arguye en su alegato la representación del apelante, que siendo éste un tercero tenía derecho a confiar en las constancias del registro y que no puede ser perjudicado por hechos extrínsecos ignorados por él en absoluto. Los hechos extrínsecos a que se refiere el apelante, o sea la declaración

de caducidad de las concesiones, la reversión de los terrenos al Gobierno por incumplimiento de las condiciones y la incautación de los terrenos por el gobierno, fueron específicamente alegados por El Pueblo de Puerto Rico por vía de contrademanda. No aparece de los autos que el demandante, quien con respecto a la contrademanda de El Pueblo de Puerto Rico ocupaba la misma posición jurídica de un demandado, formulara una contestación a dicha contrademanda. Y al no contestar la contrademanda y al dejar de alegar su condición de tercero, el demandante implícitamente admitió los hechos alegados en la contrademanda. No puede alegar por primera vez en apelación la defensa de tercero. *Torres Negrón* v. *Torres,* supra.

■ Prescindiendo en absoluto en este caso de las constancias que aparecen en expedientes o documentos fuera del Registro, veamos si en las inscripciones que aparecen en éste constan datos claros y suficientes para dar noticia o aviso al apelante Dionisio Trigo de que el Estado nunca llegó a trasmitir a los concesionarios de los terrenos envueltos en este litigio la libre disposición de los mismos, o sea que el Estado nunca llegó a desprenderse de sus derechos dominicales sobre dichos terrenos.

En todas y cada una de las inscripciones primeras de los cinco predios que más tarde se agruparon para formar la finca de 600 cuerdas que el demandante trata de reivindicar, se hace constar el derecho del adquirente con estas palabras:

"Acredita ser dueño de esta finca con anterioridad al planteamiento de la Ley Hipotecaria, por habérselo concedido la Junta Superior de Terrenos Baldíos, según título expedido por el Gobernador de esta Isla Sr. Sanz, el 26 de febrero de 1875, refrendado por el Secretario don Antonio M. de Aldrey, con la condición indispensable de revocación de la gracia y reversión al Estado si en el término de un año no tenía cultivada la décima parte, en el de cuatro la cuarta y en el de diez años la mitad a beneficio de la agricultura."

Ya hemos relacionado anteriormente lo que aparece en la inscripción primera de la finca resultante de la agrupa-

ción de los cinco predios, que es la que trata de reivindicar el demandante.

La simple lectura de esas inscripciones es suficiente para dar noticia y aviso a cualquier adquirente posterior de que el Estado al hacer las concesiones de estos terrenos en el año 1875, no se despojó de sus derechos dominicales y sólo trasmitió a los concesionarios el derecho a adquirir el dominio de los mismos mediante el cumplimiento de la condición expresa de cultivarlos en los plazos especificados en las concesiones, para beneficio de la agricultura, o mediante composición con el Estado. El registro dió aviso al adquirente posterior a los concesionarios originales que éstos, por los términos expresos de la concesión, tenían un plazo máximo de diez años, o sea hasta 1885, para adquirir el dominio y la libre disposición del predio, mediante el cultivo de una mitad de sus tierras; e igualmente dió aviso, por la inscripción primera al folio 18 del tomo 7 de Patillas, al Banco Territorial y Agrícola, a Carmen Brac Brignoni y a los esposos Allende, y al demandante que don Eduardo Cervoni y Mari, que fué el que agrupó los cinco predios, reconoció que él no tenía el dominio y libre disposición de los predios, sino solamente los derechos y acciones que pudieren corresponderle para gestionar y conseguir del gobierno la libre disposición de las seiscientas cuerdas. Y es de notarse que esa cesión de derechos y acciones, sin obligarse a evicción y saneamiento y haciendo constar que se hacía a *riesgo y ventura* del comprador, la hizo don Eduardo Cervoni a don Antonio Giordani y Semidey por escritura de 8 de junio de 1892, o sea siete años después de la expiración del plazo máximo fijado por las concesiones originales y por el mismo Registro para poder adquirir el dominio mediante el cultivo de los terrenos. No creemos que sea posible emplear frases más claras para expresar una admisión del incumplimiento de las condiciones impuestas por la concesión y para informar al comprador que no son derechos dominicales los que se le están trasmitiendo, sino solamente las acciones y derechos para re-

clamarlos, que las que empleara el señor Cervoni al ceder por la modesta suma de trescientos pesos todos sus derechos y acciones para reclamar del gobierno la libre disposición del inmueble.

Ni el Banco Territorial y Agrícola, ni las personas que vendieron al demandante, ni este último pueden alegar ignorancia de estas constancias claras, precisas y terminantes del registro de la propiedad. Todos ellos están obligados por esas inscripciones. Si Antonio Giordani y Semidey sólo adquirió derechos y acciones para gestionar y conseguir el dominio o libre disposición del inmueble, eso fué lo único que él pudo trasmitir a Juan P. Giordani, y lo único que éste pudo hipotecar al banco, y por último, lo único que el demandante pudo adquirir a través de los varios traspasos verificados con posterioridad a la inscripción de la escritura de 8 de junio de 1892, por ser un principio elemental de derecho el de que nadie puede dar lo que no tiene, *nemo dat qui non habet.* Y del Registro no aparece constancia alguna de que Juan P. Giordani o sus sucesores hicieran gestión alguna para conseguir del gobierno la concesión del dominio o la libre disposición del inmueble.

No debemos perder de vista la posición que ocupa cada una de las partes contendientes. El gobierno demandado está en la posesión del inmueble y alega que tiene y nunca ha perdido el dominio; el demandante alega en contrario, que él ha adquirido el dominio y que por eso tiene derecho a que se reconozca su título y se le ponga en posesión. Dentro de esa situación legal, es sobre el demandante que recae el peso de la prueba, para sostener su alegación de que es dueño con título de dominio. Véanse: *Carreras* v. *Pérez,* 42 D.P.R. 359; *Merle* v. *Ramos,* 31 D.P.R. 109; *Rivera* v. *Castro,* 20 D.P.R. 496; *Rosaly* v. *Graham,* 16 D.P.R. 162; artículo 470 del Código de Enjuiciamiento Civil, ed. 1933. El demandado no ha probado su alegado título de dominio.

Trató el demandante de probar que la condición impuesta por el gobierno para la adquisición del dominio había sido cumplida por sus antecesores en la posesión del inmueble y presentó alguna prueba testifical tendiente a demostrar que en la finca se habían hecho plantaciones de café, las que fueron destruídas por el ciclón del año 1899, conocido por el nombre de San Ciriaco. Para refutar esa prueba el gobierno presentó los expedientes del Departamento del Interior, en los que aparecen las actas que acreditan que en el año 1896 el gobierno se incautó de dos de los predios de cien cuerdas cada uno, por no haberse cumplido las condiciones impuestas por la concesión; y además, el acta de la sesión celebrada por la Junta Superior, en 19 de septiembre de 1896, o sea dos años antes del ciclón de San Ciriaco, en la que se dió cuenta de la solicitud de Juan P. Giordani para adquirir la finca por composición, haciendo constar que Giordani se encontraba en posesión de las 600 cuerdas cuando se llevó a efecto la incautación y fué nombrado depositario de los terrenos. Esa prueba era admisible como refutación de la prueba testifical del demandante.

Somos de opinión que el demandante no probó satisfactoriamente que fuese dueño de la finca con título suficiente para darle derecho a reclamar la posesión del inmueble, y que *la sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Wolf disintió.*