THE AMERICAN RAILROAD COMPANY OF PORTO RICO, DEMAN-
DANTE Y APELANTE, *v.* WOLKERS, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Sección 1ª., en causa sobre cobro de lo indebido.

No. 1199.—Resuelto en abril 6, 1915.

COBRO DE LO INDEBIDO—APRECIACIÓN DE LA PRUEBA—EXAMEN DE LAS PRUEBAS.—
Examinadas las pruebas practicadas, se resolvió que la apreciación que de
ellas hizo el juez sentenciador es correcta, siéndolo también la conclusión
que contiene su sentencia.

ID.—PAGO DE LO INDEBIDO—CUASICONTRATO.—La materia del pago de lo inde-
bido, como se denominaba anteriormente, o del cobro de lo indebido, como se
designa hoy, da origen a un cuasicontrato que los romanos distinguieron con
el nombre de *solutio indebiti* y que ha sido objeto de constante legislación y
jurisprudencia.

ID.—CUASICONTRATO DE COBRO DE LO INDEBIDO.—De acuerdo con la ley vigente y
la jurisprudencia, para que exista el cuasicontrato de cobro de lo indebido, es
necesaria la concurrencia de dos requisitos, a saber: (1), que se pague inde-
bidamente, y (2), que se haga el pago por error o equivocación y no por
mera liberalidad o por cualquier otro concepto.

ID.—ERROR DE HECHO—ERROR DE DERECHO.—El error que dá origen al cuasi-
contrato debe ser de hecho y no simplemente de derecho.

ID.—CONOCIMIENTO DE LOS HECHOS—RESTITUCIÓN DE LA CANTIDAD PAGADA.—
Cuando con conocimiento de los hechos se hace el pago indebidamente, no
puede pedirse la restitución de la cantidad entregada.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. F. G. Pérez Almiroty.*

Abogado del apelado: *Sr. Eugenio Benítez Castaño.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra sentencia de la Corte de Distrito de San Juan, Sección 1ª., por virtud de la que se declaró sin lugar cierta demanda sobre cobro de lo indebido.

En la demanda se alega, en resumen, lo que sigue:

1, 2 y 3. Naturaleza, residencia y capacidad de las partes.

4. El 24 de marzo de 1912 y a causa de un accidente ferroviario ocurrido a uno de los trenes de la demandante, falleció Félix Wolkers, quien en aquella ocasión conducía como maquinista el tren de referencia.

5. Con tal motivo el demandado Justo Wolkers, como padre legítimo de Félix, reclamó privadamente a la demandante los daños y perjuicios que alegó haber sufrido por la muerte de su hijo y entró en negociaciones con el Sr. Villard, director general de la corporación demandante. Esta se hallaba en ellas asistida de su letrado Pérez Almiroty y Wolkers del suyo Benítez Castaño.

6. La demandante creyó de buena fe las afirmaciones de Wolkers sobre el extremo de ser la única persona con derecho a tal reclamación y transó con él definitivamente el asunto entregándole al efecto la suma de dos mil seiscientos dólares.

7. Así las cosas y cuando la demandante creía terminado definitivamente el asunto, fué demandada por la misma causa, por Tomás Sanjurjo, como defensor judicial de los menores Aurelia y Marcelina Wolkers, declaradas por la Corte de Distrito de San Juan, en un pleito seguido contra Justo Wolkers y fallado en su rebeldía, hijas naturales reconocidas de Félix Wolkers.

8. Al hacer el pago a que se refiere el hecho 6, la demandante ignoraba la existencia de tales hijas naturales de Félix Wolkers, habiendo resultado negativas las gestiones que practicara para averiguar si el dicho Félix Wolkers dejaba otros herederos que su padre.

9. El demandado Justo Wolkers, cobró y percibió de la

demandante sin derecho a ello la suma que se ha especificado, por el motivo y en la ocasión que se han referido.

10. La demandante verificó dicho pago por error, al cual fué inducida por las manifestaciones del demandado quien le aseguró que su hijo Félix había muerto intestado y sin dejar descendencia legítima ni natural reconocida.

La demanda, que está jurada, termina con la súplica de que se dicte sentencia condenando al demandado a devolver a la demandante la suma de dos mil seiscientos dollars que le cobrara indebidamente y sin tener derecho a ello, con intereses legales, y pago de costas, gastos, desembolsos y honorarios de abogado.

En su contestación el demandado acceptó los hechos 1, 2, 3 y 4 de la demanda y negó los otros que la misma contiene, y, como materia nueva, alegó, en resumen, que inmediatamente después de ocurrida la muerte de Félix Wolkers, la demandante solicitó una transacción con el demandado, en su carácter de padre de Félix; que el demandado fué a las oficinas de la demandante y no habiendose puesto de acuerdo con ella, designó como su abogado al Sr. Benítez Castaño; que antes de ultimarse la transacción, la demandante, por medio de su abogado Pérez Almiroty, hizo averiguaciones sobre quiénes eran los herederos de Félix Wolkers y averiguó en efecto que Wolkers murió siendo soltero y dejando dos hijas naturales no reconocidas en aquel entonces, no obstante lo cual aconsejó a la compañía que transara; que las dichas hijas naturales de Félix Wolkers ya reconocidas como tales por sentencia, entablaron demanda contra la compañía demandante en reclamación de daños y perjuicios por la muerte de su padre, y la compañía tuvo a bien transigir dicho pleito.

La contestación, que también está jurada, termina suplicando que se dicte sentencia declarando sin lugar la demanda con las costas, desembolsos y honorarios de abogado a la demandante.

El 24 de abril de 1914 se celebró la vista del pleito leyén-

dose las alegaciones y practicándose las pruebas, y el 16 de mayo de 1914 el juez pronunció su sentencia declarando sin lugar la demanda, sin especial condenación de costas.

En su opinión el juez sentenciador Sr. Córdova Davila, analizando la prueba practicada y exponiendo las circunstancias del caso y las razones en que fundó su fallo, se expresa así:

"Este testimonio (se refiere al del abogado de la compañía demandante Sr. Pérez Almiroty), demuestra claramente que la corporación demandante, cuando se llevó a efecto la transacción con Justo Wolkers, sabía que existían unos menores a quienes se tenían por hijos de Félix Wolkers, aunque en aquella fecha aún no habían sido reconocidos. Por tanto hay que llegar a la conclusión de que esta corporación, al satisfacer la suma exigida por Justo Wolkers, lo hizo a sabiendas de que tenía ante sí la perspectiva de un pleito, en caso de que los menores referidos llegasen a obtener la declaración de hijos naturales del fenecido Félix Wolkers. La parte demandante, hace mucho hincapié en las manifestaciones hechas por el demandado en la escritura de transacción, asegurando que su hijo Félix murió sin testamento y sin dejar descendencia legítima ni natural reconocida, y que por consiguiente es él la única persona con derecho a reclamar a la compañía. Por mucho que haya sido la mala fe de Justo Wolkers, que estamos muy lejos de defender, la corporación demandante tenía conocimiento de que habían unos niños a quienes se tenían por hijos de Félix Wolkers, y no pudo ser engañada por las manifestaciones del demandado. Pero aun hay más; en la misma declaración prestada por el Sr. Pérez Almiroty, como abogado de la demandante, a raíz de las manifestaciones que anteriormente copiamos, se hacen las siguientes:

" '¿ Vd. quiere decir que por los hechos de este asunto Vd. podría confiar en ganar este asunto para la compañía? Si señor, y si habíamos de gastarnos en el pleito mil pesos, pues esos mil pesos se los damos a los menores; por esta razón se ha hecho esta oferta, máxime cuando ya la compañía ha pagado dos mil pesos a Justo Wolkers.'

"La corporación demandante, satisfizo, según consta del récord, dos mil cuatrocientos dollars a los hijos naturales de Félix Wolkers, incluyendo los honorarios de abogado. Para justificar la conducta de la compañía ofreciendo mil pesos a los menores Clemente y María Wolkers, por vía de transacción, el Sr. Pérez Almiroty dice que se ofrece esta suma por las razones que indica, *máxime cuando ya la*

*compañía ha pagado dos mil pesos a Justo Wolkers.* Esto demuestra que al ofrecer esta suma la corporación entró en sus cálculos la cantidad de dos mil dollars satisfecha ya a Justo Wolkers, y esta manifestación se hizo indudablemente con el propósito de influir en el ánimo de la corte, teniendo en cuenta los desembolsos hechos ya por la demandante con anterioridad. Como estos récords de autorización judicial han sido presentados como prueba, debemos hacer constar que éste fué uno de los argumentos utilizados por el Sr. Llorens Torres para convencernos de que la transacción era razonable, y de que, como cuestión de equidad, algún peso debían tener en el ánimo de la corte los desembolsos hechos ya por la compañía. A nuestro juicio, la corporación demandante no tiene derecho a reclamar una suma, cuyo pago utilizó como argumento para poner de relieve ante la corte los desembolsos hechos por ella, los cuales tuvo en cuenta, según se desprende de la declaración del Sr. Pérez Almiroty, al ofrecer mil dollars a los hijos de Félix Wolkers para llevar a efecto la transacción.

✻    ✻    ✻    ✻    ✻    ✻    ✻

"Fallamos este caso, desestimando la demanda, porque desde el punto de vista legal entendemos que la demandante no tiene derecho a querellarse, por haber satisfecho una suma, teniendo conocimiento de las consecuencias a que se exponía al hacerlo, y por haber utilizado el pago de esta suma como elemento de prueba en el expediente de autorización judicial, y por haber entrado en sus cálculos el desembolso de la referida suma, al ofrecer a los menores una cantidad determinada por vía de transacción."

Hemos examinado las pruebas practicadas y a nuestro juicio, la apreciación que de ellas hace el juez sentenciador es correcta, siéndolo también la conclusión que contiene su sentencia.

La materia del *pago de lo indebido,* como se denominaba anteriormente o del *cobro de lo indebido* como se designa hoy tiene hondas raíces en la ciencia del derecho. Da origen a un cuasicontrato que los romanos conocieron con el nombre de *solutio indebiti;* fué regulada por las Siete Partidas; ocupa la sección segunda del título XVI del Código Civil Español que trata de las obligaciones que se contraen sin convenio y los artículos 1796 a 1802 del Código Civil revisado; y ha sido estudiada y esclarecida por los tribunales

y los tratadistas. Véanse las sentencias del Tribunal Supremo de España citadas en Pantoja, Repertorio de la Jurisprudencia Civil, 1838–82, tomo 2, págs. 266 y 267, y en el Repertorio de la Jurisprudencia Civil publicado por la Redacción de la Revista de Legislación y Jurisprudencia, tomo 1, págs. 383 y 384, y también la de 23 de diciembre de 1903, reportada en la Jurisprudencia del Código Civil por V. A. M., tomo 12, pág. 70 y siguientes. Véase de igual modo la sentencia de esta Corte Suprema de Puerto Rico en el caso de *Arandes* v. *Báez,* 20 D. P. R., 388, y las siguientes obras: 12 Manresa, Comentarios al Código Civil, 587 y siguientes; 4 Falcón, Código Civil, 420 y siguientes; 2 Pedregal, Código Civil, 830, y 1 Giorgi, Teoría de las Obligaciones, 30 y siguientes.

De acuerdo con la ley vigente y la jurisprudencia, para que exista el cuasicontrato de cobro de lo indebido, es necesaria la concurrencia de dos requisitos, a saber: 1º., que se pague indebidamente, y 2º., que se haga el pago por error o equivocación y no por mera liberalidad o por cualquier otro concepto. El error que da origen el cuasicontrato, debe ser de hecho y no simplemente de derecho.

Si alguna acción existía en contra de la corporación demandante por virtud de la muerte del maquinista Félix Wolkers, tal acción correspondía a sus herederos. En este caso la demandante entendió que el verdadero heredero de Félix Wolkers, lo era su padre legítimo Justo Wolkers, y con él transó el asunto. Luego de ultimada la transacción, un tribunal dictó sentencia declarando ciertas personas hijas naturales reconocidas de Félix Wolkers. De acuerdo con la ley, estas personas, es decir, las hijas naturales reconocidas, y no el padre legítimo, eran los verdaderos herederos. La compañía lo entendió así y cuando fué por ellas demandada, les propuso transar su reclamación y la transó en efecto.

No se trata en este caso de una deuda ficticia o previamente solventada. La compañía demandante reconoció voluntariamente la obligación en que estaba de indemnizar a los

herederos de su maquinista muerto mientras cumplía con los deberes de su cargo. Lo anormal en este caso consiste en haber pagado la compañía por vez primera a una persona a quien creyó heredero y resultó no serlo.

El demandado Wolkers hizo constar en el contrato de transacción "que su expresado hijo murió sin testamento y sin dejar descendencia legítima ni natural reconocida y por consiguiente es él la única persona con derecho a reclamar de dicha compañía" y en la declaración que prestara en el acto de la vista, dijo: "Cuando se hizo esa transacción se decía que mi hijo tenía esos hijos, pero que no estaban reconocidos ni tenían madre. A mí me preguntaron si tenían madre viva o era casado, y dije, no señor; a mí no me preguntaron absolutamente nada más. Decían que esos hijos eran de ellos, pero como no eran casados, yo lo sabía por díceres, yo no tenía una prueba de que eran hijos de él."

Si los hijos en realidad de verdad no eran legítimos, ni tenían la condición de naturales reconocidos, entonces el verdadero heredero era el demandado. No hay prueba directa alguna en los autos que demuestre que el demandado al tiempo de verificar la transacción, tuviera conocimiento de que los hijos naturales de que se trata hubieran sido reconocidos debidamente por su padre y es un hecho cierto que para acreditar su condición de reconocidos, los hijos tuvieron que recurrir a los tribunales de justicia después de llevada a efecto la transacción.

Ya hemos visto que la compañía ferroviaria demandante tenía conocimiento de la existencia de los hijos naturales cuando transó con el demandado. Quiere decir que la compañía se encontraba en las mismas condiciones que el demandado. Ambos sabían que existían personas que se decían hijos de Félix Wolkers, pero ambos partieron de la base de que dichas personas no tenían derecho a heredar por no ser hijos legítimos; ni haber sido reconocidos como hijos naturales.

Bajo tales circunstancias ¿puede concluirse que hubo cobro de lo indebido por error de hecho en este caso?

A nuestro juicio la existencia del segundo de los requisitos que fija la ley para que pueda exigirse la devolución de la cantidad pagada indebidamente, no se ha comprobado. La compañía demandante no puede alegar que actuó desconociendo la verdad de los hechos. Si existían hijos, éstos podían recurrir a los tribunales y acreditar ante ellos su filiación y en tal caso ellos y no el padre legítimo (artículo 909 del Código Civil revisado), serían los herederos del maquinista fallecido. La compañía no puede alegar ignorancia de la ley.

Si, pues, con conocimiento de los hechos, la compañía pagó al demandado, no puede ahora volver sobre su propios actos y pedir la restitución de la cantidad bajo tales circunstancias entregada. Además, como consigna la corte sentenciadora en la opinión que sirve de base a la sentencia apelada, cuando la compañía demandante transó finalmente con los verdaderos herederos de Félix Wolkers y se acudió a la corte para que autorizara la transacción por ser dichos herederos menores de edad, la compañía invocó el hecho del pago al demandado a los efectos de graduar la cuantía de la indemnización y la corte lo tuvo en cuenta para autorizar el contrato en la forma en que se proponía. No queremos decir que la corte al proceder así actuara legalmente, pero exponemos lo ocurrido porque ello constituye un impedimento más para que la demandante pueda ejercitar con éxito la acción establecida en este caso.

Por las razones expuestas opinamos que debe confirmarse en todas sus partes la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.