AUGUST y CONSTANT GOFFINET, demandantes y apelados, *v.* CIPRIANO MANRIQUE y AGUAYO HERMANOS & Co., SUCRS. S. en C., demandados y apelantes.

No. 3507.—*Visto:* Junio 16, 1925. *Resuelto:* Julio 20, 1925.

1. PAGOS—COBRO DE PAGOS—PAGOS INDEBIDOS—ERROR DE HECHO EN LA ENTREGA. —Entregado ciertos azúcares, por valor determinado, a una persona que no tenía derecho a ello, y realizada la entrega por la manifestación del demandado al demandante de que, a excepción del crédito de éste, él era dueño de los demás créditos a que aquella cantidad debía destinarse, el error en la entrega es uno de hecho y no de derecho.

2. CONTRATOS DE REFACCIÓN—PREFERENCIA DE CRÉDITO—ACREEDORES CON DERECHO A ALEGARLA—"ESTOPPEL".—Habiendo intervenido un acreedor, con otros más, en un contrato en el cual se estipuló que del producto de las cañas del deudor se deduciría el importe de determinada refacción y el remanente se distribuiría entre dichos acreedores, cualquier otro acreedor refaccionario independiente de dicho contrato, y no dicho acreedor, es al que corresponde alegar su contrato de refacción y derecho preferente a dicho remanente.

3. APELACIÓN Y ERROR—REVISIÓN—CUESTIONES DE HECHO, VEREDICTOS Y CONCLUSIONES—CONCLUSIONES SOBRE PRUEBA CONTRADICTORIA.—Cuando la cuestión envuelta en un pleito queda circunscrita a un conflicto de evidencia y la corte inferior la resuelve a favor de una parte y dentro de las circunstancias concurrentes del caso dicha corte tuvo razón para así resolver el conflicto, procede confirmar la sentencia apelada.

4. APELACIÓN Y ERROR—REVISIÓN—DISCRECIÓN DE LA CORTE INFERIOR—CONDENA EN COSTAS.—Siendo la temeridad de una parte manifiesta al no devolver lo que recibió indebidamente de otra y sostener un pleito en cobro de lo indebido, la condena en costas impuéstale no es errónea.

SENTENCIA de *Pablo Berga,* J. (Humacao), declarando con lugar la demanda, con costas. *Confirmada.*

*González Fagundo & González Jr.,* abogados del apelante; *Henry G. Molina,* abogado de lós apelados.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

En 10 de julio de 1918 los demandantes y demandados, Gregorio Solá Delgado y otros acreedores de este último, celebraron un convenio consignándose, entre otras cláusulas, las siguientes:

"(c) Los Barones August y Constant de Goffinet, mediante la constitución por el señor Solá y Delgado del correspondiente contrato de refacción agrícola, suministrarán a dicho señor las canti-

dades que convengan para las plantaciones de canas dulces de azúcar que aquél hiciera en las fincas descritas en los hechos primero y segundo de esta escritura y en otra finca que el repetido señor Solá Delgado tiene arrendada a la Sucesión de Don Gerardo Puig; debiendo dichos señores de Goffinet con cargo a dicho crédito refaccionario, facilitarle la cantidad de ciento cinco dollars mensuales para el pago de los cánones de arrendamiento de la susodicha finca de la Sucesión Puig. Los Barones de Goffinet, al molerse las cañas que plantará o tenga en la actualidad plantadas el señor Solá y Delgado, procederán al cobro de las cantidades que aquél estuviere adeudando por refacción agrícola y cánones de arrendamiento dejando el sobrante en su poder a la disposición de los acreedores que aquí comparecen, incluso ellos, para ser repartido en la forma y proporción que más adelante se dirá; pero si no hubiere sobrante y por el contrario se quedasen adeudando por el señor Solá y Delgado los cánones de arrendamiento anticipados por los señores de Goffinet, dichos cánones serán satisfechos proporcionalmente por los acreedores quienes podrán disponer de los bienes que entrega el señor Manrique al susodicho señor Solá y Delgado, para con ellos o la parte que fuere menester, cubrir el importe de esos cánones de arrendamiento.

"(*d*) Don Gregorio Solá Delgado se obliga en la más solemne forma a plantar, cultivar y cosechar, por sí o sus empleados, cañas dulces de azúcar, tabaco y demás frutos que fueran convenientes, en las fincas descritas en los hechos primero y segundo de esta escritura y en la que tiene arrendada a la Sucesión de Don Gerardo Puig y a poner a la disposición de sus acreedores, aquí comparecientes, el producto líquido de dichas plantaciones; cuyo producto se distribuirá proporcionalmente entre dichos acreedores   *   *   *."

Los demandantes, fundándose en ese convenio, alegaron substancialmente en la demanda que Gregorio Solá Delgado les entregó todas las cañas refaccionadas por ellos, produciendo un total de $22,514.07, y que deduciendo de dicha suma el importe de refacción que se debía a los demandantes, ascendente a $14,279.84, quedaba un saldo de $8,234.23 para el pago total de los créditos contra dicho Solá, reconocidos por éste en el mencionado contrato de julio 10, 1918; que los demandantes durante el año 1920 a solicitud del demandado Manrique entregaron a éste azúcares por valor de $8,234.23

procedentes de las cañas a que se refiere el contrato, por haber sido informados por dicho demandado que él había adquirido todos los créditos relacionados contra Solá; que en 1922 la demandada Aguayo Hermanos & Co. Sucrs., S. en C., presentó una demanda ante la Corte de Distrito de Humacao contra los actuales demandantes, reclamándoles el pago de los $788.49, en virtud de lo convenido en el contrato de julio 10, 1918; que los demandantes al ser requeridos extrajudicialmente y antes de la presentación de la demanda por Aguayo Hermanos & Co., Sucres., S. en C., se dirigieron inmediatamente al demandado Manrique para que devolviera los $788.49 con intereses correspondientes para pagar la cuenta de dicha mercantil demandante y ahora demandada, o que dicho demandado Manrique la pagara a ella directamente, a lo que se negó el demandado, aunque admite que la referida cuenta nunca había sido satisfecha.

El demandado contestó la demanda aceptando unos hechos y negando otros, y estableció, además de otras defensas, los señalados en la contestación con las letras (*a*) y (*d*), que dicen como sigue:

"(*a*) Que posteriormente a la celebración del contrato de Julio 10, 1918, relacionado en la demanda, además del crédito refaccionario para las plantaciones de cañas que los Barones de Goffinet concedieron a Gregorio Solá Delgado por ser su montante insuficiente, éste tuvo que celebrar dos contratos más de refacción para dichas plantaciones: el primero con Antonio Longo González por dos mil setecientos cincuenta y siete dollars con setenta centavos, importe de fertilizantes; y el segundo con el demandado compareciente, por tres mil cuatrocientos sesenta y un dollars con cuarenta y nueve centavos, por dinero efectivo para pago de jornales de peones y de alquiler de bueyes, cuyos contratos fueron anotados en el Registro de Contratos Agrícolas.

"(*d*) Que también con instrucciones de la propia sucesión de Gregorio Solá Delgado, el demandado compareciente satisfizo por cuenta de ella los gastos de la última enfermedad y entierro del causante, y de su abintestato, y atendió además al sostenimiento personal durante muchos meses de la viuda e hijos menores de edad del

mismo causante, y abonó el remanente a la cuenta de dicha sucesión con él, la que no quedó balanceada, sino con un saldo a favor del demandado compareciente, ascendente a más de ocho mil dollars.''

La corte inferior después de acordar la eliminación de las defensas (*a*) y (*d*) transcritas por ser materia impertinente a la cuestión que se ventila, declaró con lugar la demanda, y contra la sentencia se estableció esta apelación, señalándose por el apelante los siguientes errores, a saber:

''Primero.—Estimar que la demanda exponía hechos suficientes constitutivos de causa de acción.

''Segundo.—Decretar la eliminación de las defensas letras (*a*) y (*d*) establecidas en la contestación a la demanda por el demandado-apelante.

''Tercero.—Estimar que la prueba sostiene las alegaciones esenciales de la demanda.

''Cuarto.—Estimar que el demandado-apelante no podía adquirir por compra al administrador judicial los azúcares de la Sucesión de Gregorio Solá sin pagar el crédito de Aguayo Hermanos y Co., S. en C.

''Quinto.—Estimar incurso al demandado Manrique en temeridad tan grande que fuera merecedor de ser condenado al pago de costas.''

[1] El apelante funda su excepción de falta de causa de acción en no exponer la demanda: 1º, cuál fué el producto líquido partible de las cañas; 2º, negligencia contributoria de los demandantes de no haberse cerciorado de la información dada por Manrique de haber adquirido todos los créditos contra Solá; 3º, que el error que se alega es de derecho; 4º, que el dinero se reclama para Aguayo Hermanos y Co., S. en C., con quien Manrique no está unido por ningún vínculo de derecho.

Los dos primeros motivos basta enunciarlos en relación con el texto de la demanda para llegar a la conclusión de que si ejercen alguna influencia es más bien como elementos de prueba, que podemos considerar más adelante. También carece de importancia el motivo 4º, pues es un reparo a la súplica de la demanda y no a sus alegaciones esenciales.

El único fundamento de más seria consideración es el in-

dicado con el No. 3. La demanda, aunque titula la acción "devolución de dinero y cumplimiento de contrato," es en realidad una acción que se basa en el artículo 1796 y siguientes del Código Civil sobre cobro de lo indebido y se alega que el error de los demandantes entregando todos los azúcares procedentes de las cañas de Solá a Manrique por haberles informado éste que él había adquirido todos los créditos a que se contrae el contrato de 10 de julio de 1918, es un error de derecho y que de acuerdo con la jurisprudencia, tanto americana como española, el que paga lo indebido tiene acción para pedir la devolución de lo pagado cuando el error es de hecho, pero no así cuando es de derecho. Cita en apoyo el apelante los casos de *Arande* v. *Báez,* 20 D.P.R. 388; *American Railroad Company* v. *Wolkers,* 22 D.P.R. 283; *Sucesión Marín* v. *Municipio de Arecibo,* 28 D.P.R. 515. Estos casos, sin embargo, no guardan analogía al de autos. Aquí se trata primero, de que el demandado no tenía derecho a la entrega del azúcar, producto de las cañas, sin pagar el total de su valor o precio a los demandantes para destinarlo, según las prescripciones del contrato antes mencionado; y segundo, que si se realizó la entrega reteniendo Manrique el sobrante que se había de distribuir entre los acreedores de Solá, fué por error de hecho consistente en la manifestación del demandado a los demandantes, según se alega, de que él era el dueño de todos los créditos contra el deudor Solá menos el de los demandantes.

[2] La corte inferior tuvo razón al ordenar la eliminación de las defensas (a) y (d). El apelante insiste que el contrato de 10 de julio de 1918 dejó libre a Gregorio Solá para celebrar ulteriores contratos de refacción en caso de ser insuficientes las cantidades que por refacción debía recibir de los demandantes y acordada en el contrato original en que intervino como parte el mismo demandado Manrique. Parece que el fin de esta contención es sostener que habiendo celebrado Gregorio Solá, posteriormente, contratos de refacción, uno de ellos con el demandado Manrique, no podía dis-

poner del sobrante de que trataba el referido contrato de julio 10, 1918, mientras no se cubrieran dichos contratos posteriores de refacción.   Realmente la posición del demandado es rara toda vez que él no es tercero en relación al contrato de julio 10, 1918, en que él intervino como uno de los tantos acreedores, y en cuanto a cualquier otro acreedor refaccionario independiente de aquel contrato, a dicho acreedor era a quien correspondería alegar quizás tal defensa, alegándose, desde luego, su derecho preferente.

[3] No teniendo ningún valor ni efecto las defensas que fueron propiamente eliminadas, la cuestión queda circunscrita a un conflicto de evidencia que resolvió la corte a favor del demandante.

Por el contrato de julio 10, 1918, que no fué otro que un convenio de acreedores para dar respiro y ayuda al deudor Gregorio Solá, se declara el montante de lo que se adeuda a cada uno de ellos.   En el mismo documento se convino además que los Barones Goffinet, demandantes, harían un contrato de refacción agrícola, suministrándole a Solá ciertas cantidades para el cultivo de las plantaciones de caña, autorizándole (cláusula (e)) expresamente el deudor a los demandantes para que al molerse las cañas procedan al cobro de las cantidades que Solá les estuviera adeudando por razón de la refacción, dejando el sobrante en poder de dichos demandantes a la disposición de los acreedores que se relacionan en la escritura, inclusive los demandantes, para ser distribuído como se indica en la cláusula (d).

Las cantidades suministradas por refacción a Solá alcanzaron a $14,279.84, que junto a los $7,796.05 de los acreedores, consignado en la escritura de convenio, hace un total de $22,075.05.

Las cañas dieron al deudor 2,255 qqs. 85 lbs. y produjeron $22,514.07.

Aparece claro que dichas cañas dieron un valor en azúcar para satisfacer todas las acreencias consignadas y previstas en el contrato de julio 10, 1918.   Después de satisfe-

cha la refacción montante a $14,279.84, quedaba, pues, un sobrante de $8,234.23 para el pago total de los créditos contra Solá, reconocidos por éste en el mencionado contrato, a saber:

| | |
|---|---:|
| August y Constant Goffinet | $533. 67 |
| N. Santini & Co. | 2290. 45 |
| Cipriano Manrique | 2959. 47 |
| J. V. Ruiz & Ca. | 519. 32 |
| V. Caraballo & Ca. | 704. 81 |
| Aguayo Hermanos & Co., S. en C. | 788. 49 |
| Total | $7796. 21 |

La venta y entrega de todos los azúcares se hizo al propio Cipriano Manrique. Este pagó a los demandantes todo lo que se les adeudaba por razón del convenio de julio 10, 1918, y además debía entregar $8,234.23 como sobrante del precio del azúcar para dar los demandantes cumplimiento a lo estipulado en aquel convenio, pagando a los demás acreedores, incluso la obligación de pagar la suma de $788.49 a la mercantil Aguayo Hermanos & Co., S. en C., que es el objeto único de la demanda; pero dicho sobrante pasó y quedó, sin embargo, en poder del demandado Manrique y aquí es que surge la verdadera cuestión en este pleito, pues todo ello se reduce a un conflicto entre la declaración del testigo Prudent Wittemans, apoderado de los demandantes y director de la Central Santa Juana, y la del demandado Cipriano Manrique.

El primero declaró:

"Antes de esas operaciones, el señor Manrique habló por teléfono conmigo y me manifestó que él había comprado o que iba a comprar el azúcar de los señores Solá, si no teníamos inconveniente en darle los azúcares, porque la Central Santa Juana que yo represento compramos algunas veces azúcares a los colonos, de manera que el azúcar lo compró el señor Manrique, y yo le pregunté desde luego al Sr. Manrique, o le indiqué, que de acuerdo con el convenio que teníamos firmado, no podíamos hacer entrega de la azúcar a menos que se me entregara el importe total del dinero, a lo cual contestó el señor Manrique que él tenía todos los créditos menos el

de la Central que era de los Goffinet que éramos los únicos acree-
dores, y que él iba a pagar la cuenta de anticipos adeudados por la
Sucesión del señor Solá, cargándole eso a su cuenta y abonándole
la cantidad de azúcar a la cuenta de él.

"¿De manera que el señor Manrique le manifestó a usted que
él era el dueño de todos los créditos menos el de los Barones de
Goffinet?—El no me dijo que era el dueño, me dijo que éramos los
únicos dos acreedores de la Sucesión Solá.

"¿Sabiendo usted que existía un contrato por el cual los Baro-
nes de Goffinet venían obligados a retener en su poder el remanente
del producto de esas cañas después de cobrado el crédito de ustedes,
o de los Barones de Goffinet, sabiendo usted eso, por qué entregó
usted ese azúcar al señor Manrique?

"Ledo. González.—Eso es inmaterial completamente.

"Ledo. Antongiorgi. — Es muy material. Yo quiero saber por
qué el testigo, que actuaba como apoderado de los demandantes en
este caso, sabiendo que existía ese contrato, a pesar de eso entregó
al señor Manrique la totalidad del azúcar que debía retener en su
poder para pagar los créditos.

"Hon. Juez.—Puede contestar.

"Ledo. González.—Tomo excepción.

"Testigo.—Pues entregué el azúcar al señor Manrique, por las
manifestaciones que él había hecho de que éramos los dos únicos
acreedores, habiendo cobrado nosotros los quinientos y pico de dó-
lares estipulados en la escritura, habiéndolos cobrado, quedaba el
señor Manrique único acreedor de la Sucesión del señor Gregorio
Solá, y por consiguiente él podía disponer del remanente."

Más luego el testigo no recuerda si la conferencia la tuvo
por teléfono o personalmente, pero en lo sustancial que he-
mos transcrito el testigo mantiene sus afirmaciones. Man-
rique negó y declaró que eran falsas las manifestaciones de
Wittemans, pero la corte inferior dirimió el conflicto en fa-
vor de los demandantes, y a nuestro juicio dicha corte tuvo
razón, pues aparte del conjunto de circunstancias que con-
curren en este asunto, el mismo testigo Wittemans dió en
forma lógica la razón de su dicho cuando al ser repregun-
tado de que si exigió algún comprobante, alguna prueba de
que él era el cesionario de esos créditos, contestó: "No,

bastó la manifestación del señor Manrique, que es una persona de responsabilidad, y además en aquel momento tenía más de cien mil dollars en el almacén propiedad de él.'' Esto contesta además a la alegada negligencia de no haberse cerciorado los demandantes de las manifestaciones de Manrique.   Tal vez, como sostiene el apelado, en la reclamación que le hizo directamente Aguayo Hermanos & Co., S. en C., a los demandantes podría tener algún fundamento tal imputación, pero no así para el propio demandado Manrique, en quien confiaran dichos demandantes dejando en su poder el sobrante del producto del azúcar bajo el error a que les indujo haciéndoles creer que él y los Goffinet eran los únicos acreedores de la sucesión de Gregorio Solá Delgado, quien ya había fallecido.   Sin tal inducción a error, no parece natural que los demandantes se hubieran desprendido de lo que tenían en su poder para distribuir según fueron autorizados entre los acreedores de acuerdo con el convenio.

No vemos tampoco la influencia que pueda tener la alegación del apelante de que no aparece probada la entrega de cañas a los demandantes.   Aparece, sin embargo, que si bien dicho fruto fué entregado a la sociedad Anonyme des Sucreries de Saint Jean, dueña de la Central Santa Juana de Caguas, los demandantes eran los refaccionistas de los colonos de dicha central y los azúcares quedaban afectos a los contratos de refacción y en ese sentido el testigo Wittemans decía: ''Cuando hay un crédito refaccionario con un colono, si el colono vende el azúcar, la Central Santa Juana es la que entrega el azúcar y retiene el importe del dinero para abonarlo a los señores Goffinet.''   En este caso la central fué notificada del contrato de refacción a que se refiere el convenio de julio 10, 1918, y se autorizó expresamente a los demandantes, una vez cobrados de su refacción, etc., a retener en su poder el sobrante para pagar a los acreedores que figuran en el repetido convenio.

[4] La corte inferior no cometió error al imponer las costas al demandado Cipriano Manrique.   Su temeridad fué

manifiesta al sostener este pleito y no devolver lo que reci-
bió indebidamente de los demandantes.

*Por lo expuesto la sentencia apelada debe confirmarse.*

El Juez Asociado Señor Wolf no intervino en la resolu-
ción de este caso.