CARLINA y ATANASIO TORRES DEL VALLE, TOMÁS ORTIZ TORRES, TOMÁS ORTIZ GONZÁLEZ, RAFAEL RIVERA DEL VALLE y RAFAEL RIVERA COLLAZO, demandantes y apelantes, *v.* CAGUAS SUGAR Co., INC. y FERNANDO GUARCH RÍOS, demandados y apelados.

No. 4649.—*Sometido:* Abril 2, 1929. *Resuelto:* Abril 5, 1929.

*González Fagundo & González, Jr.,* abogados de los apelantes; *Henry G. Molina,* abogado de la Caguas Sugar Co.; *Luis Janer Landrón,* abogado del apelado Guarch Ríos.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Solicítase en este pleito la reivindicación de dos porciones de terreno, una de dos cuerdas poseída por el demandado Guarch y otra de veinte poseída por la Caguas Sugar Co., con los frutos por ellas producidos.

Los demandantes alegan que son dueños de las indicadas fincas a virtud de herencia o liquidación de sociedad de gananciales, sin que jamás se hayan desprendido de su dominio.

Los demandados admiten que están en posesión de las fincas en cuestión, alegando que son dueños de las mismas.

De acuerdo con las pruebas practicadas resulta que el 22 de junio de 1910 Juan Ramón y José Torres García adquirieron una finca de veintidós cuerdas del márshal de la Corte de Distrito de Ponce, actuando dicho funcionario en representación de los demandados en el pleito en que se dictó la sentencia y en obediencia de ésta. De esa finca de 22 cuerdas se formaron las de 2 y 20 a que se refiere este

pleito.  La venta quedó inscrita en el Registro de.la Propiedad así:

"3ª. Rústica: finca cuya descripción consta de las inscripciones primera y segunda precedentes, a las que me remito por ser conforme con la que se hace en el documento ahora presentado, con la diferencia de que según éste sólo es objeto de la presente inscripción una porción de esta finca que se describe así: Predio de Terreno situado en el barrio de Cañabón de este término municipal, compuesto de veinte y dos cuerdas, (sigue la descripción). Esta finca aparece libre de cargas.  Doña María del Valle Serrano, doña Carlina, doña Francisca y don Atanasio Torres del Valle, adquirieron esta finca en común proindiviso por herencia testada a don Nicolás Torres y Flores, según consta de la inscripción primera citada, y los mismos doña María del Valle Serrano, doña Carlina, doña Francisca y don Atanasio Torres del Valle en unión de Secundino, Pedro, Domingo, Sebastián, José Nicomedes y Manuel Torres Acevedo, María Angela, Cesárea, Teodosia y Francisca Muñoz Torres e Idelfonso Solá, se hallaban abocados a un pleito con motivo de reclamación de herencia contra bienes de Nicomedes Torres que hicieran don Juan Ramón Torres García y don José Torres García, representados por su madre con patria potestad doña Ana María García, y realizaron aquéllos con estos últimos una transacción en junio de mil novecientos siete por la cual habían de traspasarle los dueños de la porción de terreno que aquí se describe y de otra finca, a los reclamantes el dominio de las mismas y otorgarles la correspondiente escritura de transacción, aceptando en ella la cesión de los derechos que los propios reclamantes pudieran tener en la herencia de Nicomedes Torres, y como no cumplieran lo establecido en dicha transacción, los expresados Secundino, Pedro, Domingo, Sebastián, José, Nicomedes y Manuel Torres Acevedo; María del Valle Serrano, Carlina, Francisca y Atanasio Torres del Valle, María-Angela, Cesárea; Teodosia y Francisca Muñoz Torres e Ildefonso Solá, fueron demandados por don Juan Ramón y don José Torres García, representados por su abogado don José Tous Soto, ante la Corte de Distrito de Ponce, sobre cumplimiento de dicha transacción, y en dicho pleito recayó sentencia dictada por la expresada Corte con fecha veinte y cinco de febrero último por la cual condenó a los demandados a cumplir la transacción celebrada con los demandantes en junio de mil novecientos siete, condenando asimismo a Ildefonso Solá, a reconocer esa transacción y concurrir al otorgamiento de la correspondiente escritura dando su consentimiento a la realización de to-

dos los actos derivados del contrato y renunciando a favor de los demandantes cuantos derechos pueda tener sobre una finca de treinta y seis cuerdas que se describe en el título PRESENTADO, respecto de la cual no se ha solicitado su inscripción, y finalmente declarando nulo todo contrato celebrado por Ildefonso Solá con los demandados, a los que en unión de aquél se condenan al pago de los honorarios de los abogados de la parte demandante, y de las costas correspondientes. En cuya virtud el Marshal de la Corte de Distrito de la ciudad de Ponce don Rafael Rivera Esbrí, mayor de edad, y vecino de dicha ciudad, a nombre y representación de los referidos demandados y en rebeldía de los mismos, acepta la renuncia que la parte demandante por medio de su abogado don José Tous Soto verifica de sus derechos en la herencia de don Nicomedes Torres, y en consideración a tal renuncia y por vía de transacción el expresado Marshal con la representación de los demandados que ostentan por ministerio de la Ley, trasmite a los demandantes don Juan Ramón y José Torres García, menores de edad, de por mitad y en común proindiviso la porción de terreno antes descrita y otra finca más de teinta y seis cuerdas, cuya transmisión acepta don José Tous Soto, mayor de edad, casado y vecino de Ponce, como abogado de los adquirentes habiendo ratificado dicho contrato doña Ana María García, de cincuenta años de edad, de oficios domésticos, soltera, y de esta vecindad, en carácter de madre con patria potestad de don José Torres García, de trece años, soltero, propietario y de la misma vecindad y por don Ramón Torres García, de veinte y cinco años de edad, casado, propietario y de igual vecindad . . . . Don Juan Ramón Torres García y don José Torres García inscriben a su favor dicha porción de por mitad y en común proindiviso que adquieren por título de transacción y rescisión de adjudicación y compraventa, sin condiciones especiales y con el defecto subsanable de no constar del título la edad, estado civil, profesión y vecindad de los demandados Secundino, Pedro, Domingo, Sebastián, José, Nicomedes y Manuel Torres Acevedo; María del Valle Serrano, Carlina, Francisca, y Atanasio Torres del Valle, María-Angela, Cesárea, Teodosia y Francisca Muñoz Torres e Ildefonso Solá. Todo lo referido consta de la escritura otorgada en la ciudad de Ponce el veinte y dos de junio último ante el notario de la misma don Ramón Dapena Pacheco, cuya copia ha sido presentada en este Registro, . . . constando asimismo de la copia de la escritura de ratificación antes mencionada, que se ha tenido a la vista;

    *      *      *      *      *      *    * ,,

En el propio año de 1910, el 15 de octubre, Juan Ramón y José Torres García vendieron la finca de 22 cuerdas a Nicolás Santini; en junio 10, 1911, Santini la vendió a M. Soto Aponte; en junio 30, 1913, Soto Aponte la vendió a J. M. Solá; en enero 10, 1916, J. M. Solá la vendió a Salvador F. Solá; en.abril 19, 1920, Salvador F. Solá la vendió a la Central Defensa, Inc.; en enero 10, 1921, la Central Defensa, Inc., segregó de ella dos cuerdas y las vendió al demandado Guarch, y en julio 31, 1923, vendió las veinte cuerdas restantes a la demandada Caguas Sugar Co., Inc.

Siendo esto así, representando los actuales demandantes los intereses que representaban los demandados en el pleito en el que se dictó la sentencia en cumplimiento de la cual actuó el márshal del distrito de Ponce en 1910 ¿en qué fundan su acción?

Para contestar la pregunta formulada, copiaremos a la letra el hecho 13 de la demanda. Es así:

"Décimo Tercero: En relación con los hechos contenidos en los párrafos undécimo y duodécimo precedentes, alegan ahora los demandantes: que no es cierto que se celebrase la aludida transacción entre María del Valle Serrano y sus hijos Carlina, Francisca y Atanasio, con Juan-Ramón, y José Torres García, y que de haberse celebrado habría sido inexistente, por falta de causa por parte de estos últimos, toda vez que nunca tuvieron derecho alguno en la herencia de su difunto abuelo natural Nicomedes Torres Flores, y además, por lo que respecta a Carlina, Francisca y Atanasio Torres del Valle, por ser éstos en el año 1907, fecha de la alegada transacción, menores de edad impúberes, e implicando dicha transacción la enajenación de condominios en propiedad inmueble, no se obtuvo previamente autorización judicial para efectuarla. Que en la acción entablada ante la Corte de Distrito de Ponce, P. R., se dictó sentencia contra María del Valle Serrano y sus hijos Carlina, Francisca y Atanasio, sin haberse presentado prueba alguna en apoyo de los hechos alegados en la demanda, y que la escritura de venta de la finca letra (a) a favor de Juan Ramón y de José Torres García, otorgada por Rafael Rivera Esbrí, Marshal de la referida Corte en cumplimiento de dicha sentencia, es inexistente por estar la finca vendida situada en el término municipal de Caguas, que está fuera

de los límites geográficos del Distrito judicial de Ponce, P. R. Que todas las subsiguientes transmisiones de la finca letra (a), así como las dos hipotecas que gravan la misma, son también inexistentes, por traer causa de los Torres García, que nunca fueron dueños de la finca letra (a)."

La Corte de Distrito de Humacao declaró la demanda sin lugar, con costas, basando su sentencia en una cuidadosa opinión emitida por su juez Sr. Castejón, de la cual parece conveniente transcribir lo que sigue:

"En cuanto a la certeza de la transacción de 1907, falta de causa por parte de los hermanos Torres García, por no tener derecho a la herencia de su difunto abuelo natural Nicomedes Torres, y la falta de prueba ante la corte de distrito de Ponce para sostener los hechos alegados en la demanda, entendemos que tales cuestiones no pueden ser discutidas colateralmente en este pleito, aparte de que su discusión de nuevo equivaldría a un recurso de revisión por parte de esta Corte que es en un todo improcedente.

"Se ataca la transacción por lo que respecta a los menores Carlina, Francisca y Atanasio Torres del Valle, por ser estos menores de edad en 1907, fecha de la misma e implicando dicha transacción la enajenación de condominios en propiedad inmueble no se obtuvo previamente para efectuarla la correspondiente autorización judicial.

"Si tuviéramos ante nos únicamente la transacción celebrada y en que intervinieron los menores nombrados, sería de gran peso la alegación de los demandantes.

"Pero es el caso que lo que está ante nosotros no es solamente la transacción sino una sentencia de una Corte de Distrito dictada contra esos menores obligándoles y condenándoles a cumplir tal transacción.

"¿Qué mayor autorización de la Corte de Distrito que la ratificación por medio de su sentencia condenando a los menores al cumplimiento de la misma?

"Si la transacción adolecía del defecto de la falta de autorización judicial, ésta quedó subsanada a nuestro juicio por la sentencia dictada por la Corte de Distrito de Ponce.

"En los casos de Flores vs. El Registrador de Guayama, 19 D.P.R. 1020; Avilés vs. El Registrador de Aguadilla, 17 D.P.R. 960 y García vs. El Registrador de Guayama, 23 D.P.R. 426, se resuelve la jurisdicción de las Cortes de Distrito para actuar en casos en que están envueltos bienes de menores, negándola a las cortes muni-

cipales y en el último de dichos casos la Corte Suprema se expresó así:

"'Es la Corte de Distrito la que debe intervenir en un caso semejante ya que el legislador decidió que uno de sus deberes fuera la alta inspección de la persona y bienes de los menores de edad.'

"Y tal inspección la ejercitó a nuestro juicio la Corte de Distrito de Ponce, condenando a los menores al cumplimiento de la transacción y concediendo de una manera implícita su autorización judicial a los efectos de la validez de la misma.

"Otro de los puntos legales levantados por los demandantes es el que se contrae a la inexistencia de la escritura otorgada por el Marshal de la Corte de Distrito de Ponce sobre el traspaso de la finca de veintidós cuerdas por estar la misma situada en el término municipal de Caguas y fuera de los límites geográficos del Distrito Judicial de Ponce.

"Es bien conocida la doctrina de que un Marshal no puede llevar a cabo la entrega o venta de propiedad inmueble situada fuera de su jurisdicción.

"Pero a nuestro juicio el Marshal de la Corte de Distrito de Ponce no ha realizado acto alguno que pueda considerarse como trasmisión o entrega de la propiedad, sino únicamente el ratificar y dar fuerza de ley a la transacción que los demandados se negaron a cumplir y tan es así, que al tratarse de cumplir la transacción mediante la entrega o acto de posesión de la finca a que la misma se contrae, dichas actuaciones no fueron hechas por el Marshal de la Corte de Distrito de Ponce, y sí por el de Humacao que era el Distrito donde radicaba la citada propiedad.

Se refiere a una defensa abandonada y continúa:

"La otra defensa de los demandados, la cuestión más importante levantada en este caso, es la condición de tercero.

"Atendida la definición general que da la Ley Hipotecaria en su artículo 27, un tercero es aquel que no haya intervenido en el acto o contrato inscrito.

"De acuerdo con tal definición es un hecho claro que los demandados, qué no intervinieron para nada en el contrato de transacción y su inscripción en el Registro de la Propiedad, tienen la condición de tercero.

"Ahora bien, como excepción a esta regla establece la jurisprudencia que pierde tal condición de tercero el que tuviese conocimiento de los vicios, gravámenes u otros actos que invaliden o hagan nulo el contrato inscrito.

"Pero este conocimiento tiene que aparecer claramente, bien por los actos del adquirente, bien de las propias inscripciones del Registro de la Propiedad.

"En el presente pleito se trata de este último caso o sea de causas que aparecen del Registro.

"Los artículos 33 y 34 de la Ley hipotecaria que regulan esta materia, copiados a la letra son como siguen:

" 'Artículo 33. La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes.

" 'Artículo 34. No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el Registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro.

" 'Solamente en virtud de un título inscrito podrá invalidarse, en perjuicio de tercero, otro título posterior también inscrito, salvo lo dispuesto en el artículo 389.

" 'Lo dispuesto en este artículo no será aplicable en ningún tiempo al título inscrito con arreglo a lo prevenido en el artículo 390, a menos que la prescripción haya convalidado y asegurado el derecho a que se refiera dicho título.'

"Las causas de nulidad que se alegan en este caso están expuestas en el hecho décimo tercero de la demanda y la inscripción tercera de la finca reclamada también se transcribe.

"¿Aparecen claramente de tal inscripción las causas de nulidad alegadas?

"A nuestro juicio no.

"En Ayllón y Ojeda et al. vs. González y Fernández et al., 28 D.P.R. 75–76, nuestro Tribunal Supremo se expresó así:

" '. . . Una persona que adquiere de otra cuyo título está inscrito en el Registro está protegida, a no ser que exista un claro defecto en el registro de la propiedad. El Pueblo v. Riera, 27 D.P.R. 1; Sánchez v. Hartzell et al., 26 D.P.R. 684 . . .'

"En el caso de Menéndez vs. Cobb et al., 28 D.P.R. 779, la Corte Suprema de Puerto Rico dijo lo siguiente:

" 'Ramos y Cobb compraron de persona que según el Registro tenía capacidad para vender y si por no haber sido demandada la sucesión de la esposa de Regis Ramos es nula la compra que hizo

Ramos Acosta en la subasta judicial, no resultando esa nulidad claramente del Registro no puede afectar al actual poseedor Cobb de acuerdo con el artículo 34 de la Ley Hipotecaria, el caso de Romeu v. Todd, 206 U.S. 358, y nuestra jurisprudencia en los casos de Sánchez v. Hartzell, 26 D.P.R. 684; El Pueblo v. Riera, 27 D.P.R. 1, y Ayllón y Ojeda v. González, de febrero 17, 1920, (pág. 67), según la cual los terceros sólo tienen que examinar el registro de la propiedad y sólo son perjudicados por los vicios de nulidad que resulten claramente del mismo registro.'

"Galindo y Escosura en el tomo 2, página 369 de sus comentarios a la Ley Hipotecaria nos dice lo siguiente:

" ' 'Mas no basta que en los libros conste la causa de la nulidad o de la rescisión; ha de aparecer claramente como dice la ley correspondiendo apreciar esta circunstancia a los tribunales que resuelvan el litigio.'

"Dada la anterior jurisprudencia y aplicándola a este caso, podemos decir que los demandados adquirieron de personas que aparecían en el Registro como dueñas y que ellos no estaban obligados a llevar a cabo un estudio jurídico de la inscripción tercera de la finca para averiguar si las actuaciones de la Corte de Distrito habían sido correctas y si ella autorizó a los menores para llevar a cabo la transacción cuando la misma corte de distrito era la que ordenaba el cumplimiento de tal transacción.

"Entendemos, pues, que los demandados son terceros y que no puede afectar a ellos en modo alguno cualquier causa de nulidad si ésta existiera que pudiera hacer ineficaz la referida transacción, por no aparecer tal defecto claramente del Registro de la Propiedad.

"En cuanto a la prescripción adquisitiva, ostentando los demandados un justo título y sumando el tiempo de su posesión a la de sus causantes en concepto de dueños y con buena fe han adquirido el dominio de la referida finca a virtud de la prescripción ordinaria.''

No conforme la parte demandante, interpuso el presente recurso de apelación. Su alegato contiene el siguiente señalamiento de errores:

"Primero: Estimar inatacable el pleito sobre cumplimiento de transacción seguido ante la Corte de Distrito de Ponce.

"Segundo: Estimar válida la escritura de traspaso de la finca de veinte y dos cuerdas a favor de los Torres García otorgada por el Marshal de la Corte de Distrito de Ponce.

"Tercero: Estimar que los demandantes son terceros hipotecarios a quienes no puede perjudicar la presente acción porque se funda en causas que no constan claramente del Registro de la Propiedad.

"Cuarto: Estimar que los demandados han adquirido por prescripción adquisitiva ordinaria el dominio de los inmuebles que se reivindican.

"Quinto: Condenar a los demandantes al pago de las costas de este pleito."

Prestaríase este caso para escribir una opinión amplia, bien elaborada, pero la materia ha sido por tantos años y en tantas ocasiones tratada por este Tribunal Supremo, la opinión de la corte sentenciadora revela un estudio tan concienzudo y la labor que pesa sobre el Tribunal es tan abrumadora que, aceptando los fundamentos del juez de distrito, nos limitaremos a decir que tanto a virtud del informe oral cuanto por la lectura del alegato del competente abogado de los apelantes nos hemos compenetrado bien de todos sus razonamientos y entendemos que no destruyen la sentencia recurrida.

La jurisdicción de la Corte de Distrito de Ponce era clara para actuar en el pleito sobre cumplimiento de transacción.

Este pleito no constituye un ataque directo contra la sentencia dictada en aquél, sino colateral. Siendo ello así, sólo pueden investigarse y resolverse en él las cuestiones que claramente permiten la ley y la jurisprudencia que se investiguen y decidan.

En el caso de *González et al.* v *Anglada et al.*, 33 D.P.R. 1021, esta corte por medio de su juez asociado Sr. Wolf, se expresó así:

"Somos ahora de opinión de que cuando la corte tuviere jurisdicción sobre las personas y la materia objeto de la acción, una venta de bienes de un menor no puede ser anulada simplemente por-

que el tutor no esté calificado ni inscrita su tutela. La misma norma de razonamiento que sirvió de base para sostener un justo título es aplicable a la presente situación. Una persona que compra no debe mirar más allá de la orden dictada por la corte con jurisdicción sobre las partes y la materia objeto de la acción. Davis v. Caines, 104 U.S. 391 (26 L. ed. 757), citado en el de Ayllón v. González, supra, fué un caso que procedía de Louisiana. Un primer testamento había sido sometido a la corte de testamentaría y Myra Clark alegaba su derecho de acuerdo con otro testamento. Los demandados adquirieron de conformidad con una venta ordenada por la corte de testamentaría por virtud del primer testamento. La corte resolvió que una venta hecha por orden de una corte de testamentaría era una venta judicial: que tales ventas estaban protegidas por la regla de que un título adquirido en una venta judicial de terrenos ordenada por una corte en el ejercicio de su debida jurisdicción no quedaba anulada por la revocación del decreto. En el caso citado de Gray v. Brignardello, 1 Wall, 627, 634 (17 L. ed. 692), la corte dijo in pari materia que era suficiente con que el comprador supiera que la corte tenía jurisdicción y la ejercitaba y que la orden por virtud de la cual él compró fué dictada y autorizada la venta. En el caso de McCullough v. Minor, 2 La. Ann. 466, también citado en Davis v. Caines, la corte resolvió que un comprador de buena fe en una venta judicial estaba protegido por el decreto y no tenía que ir más allá del mismo, citándose otros casos. Otros casos al mismo efecto general son los de Thompson v. Tolmio, supra; Succession of Hebrard, 18 La. Ann. 494; Succession of Lehmann, 41 La. Ann. 987 (7 So. 53) ; Webb v. Keller, (1 So. 423) 39 La. Ann. 55, 24 C. J. 668, 28 C. J. 1201. En el caso de Webb v. Keller, supra, se resolvió, citándose otros casos, que el comprador en una venta hecha por virtud de una orden de una corte de testamentaría que es una judicial, no está obligado a ir más allá del decreto que reconoce su necesidad. 'El debe fijarse en la jurisdicción de la corte, pero la certeza de los autos, referentes a cuestiones que están dentro de su jurisdicción, no puede ser disputada.' Desde luego la opinión asumía que la corte que ordena la venta tenía jurisdicción. Algunos de los casos citados para demostrar que una venta no puede ser atacada colateralmente son también aplicables.''

En el propio caso se transcribió la siguiente cita de *Corpus Juris:*

''Sección 194. I.—Ataque Colateral.—1. En General. Los pro-

cedimientos para anular una venta judicial son colaterales, a menos que se sigan en el pleito donde la orden de venta fué dictada o, como se ha resuelto mediante una acción establecida para dejarla sin efecto. En un ataque colateral sólo pueden ser considerados los procedimientos de la corte que han sido registrados; el registro es concluyente de la verdad de los asuntos en él contenidos; en cuanto a todas las cuestiones dentro de la jurisdicción de la corte, la verdad del récord no puede ser disputada colateralmente; y se presumirá, en tanto sea compatible con el récord, que se tomaron todas las medidas necesarias para la regularidad de los procedimientos. Se ha dicho en un caso de ataque colateral que sólo hay dos fundamentos por los cuales puede ser declarada nula una venta judicial; o por falta de jurisdicción de la corte que la ordena, o por fraude cometido al celebrarla.''

█ La única cuestión nueva en cierto modo envuelta, es la de la facultad del márshal para actuar en cumplimiento de la sentencia de la corte de su distrito aunque se tratara de bienes que estuvieran situados en otro distrito.

Para sostener lo resuelto por la corte sentenciadora, cita la parte apelada el caso de *Carbonell* v. *Registrador,* 17 D.P.R. 148 y al tratadista Pomeroy. Atendidas las leyes vigentes en Puerto Rico en 1910, la cita de Pomeroy es pertinente y resuelve la cuestión en sentido afirmativo. Es así:

''Un decreto expedido por un tribunal de equidad iba dirigido personalmente contra el demandado, y lo que en él se requería sólo podía ser cumplido por los actos personales del demandado. Declaraba, por ejemplo, que el demandante era el dueño en equidad de ciertos terrenos cuyo título legal tenía el demandado, y ordenaba a éste que efectuara la enajenación de la propiedad; se necesitaba un acto voluntario por parte del demandado para que el decreto fuese cumplido; si el demandado se negaba a traspasar la finca, la corte podía obligarlo a obedecer imponiéndole multa y cárcel. El decreto nunca equivalía a un título en substitución de un traspaso real por parte del demandado; ni era cumplido por ningún funcionario a nombre del demandado. También se ha demostrado que esta característica original de los remedios y decretos de equidad ha sido grandemente modificada por estatutos de los Estados Unidos. De acuerdo con éstos, se hace que los decretos surtan efecto por sí solos siempre que fuere necesario, como un título suficiente. Son de por sí

suficientes para traspasar la propiedad sin necesidad de que el demandado haga traspaso formal alguno, o se hacen cumplir por funcionarios que se supone actúan a nombre y en lugar del demandado. Además de este importante cambio estatutorio, la naturaleza personal que tenían los remedios subsiste aún en todos aquellos casos en que sería imposible efectuar una alteración.'' 1, Pomeroy, Equity Jurisprudence, 798.

Se distinguen, pues, perfectamente de este caso los de *Benet* v. *Hernández*, 22 D.P.R. 348; *Maldonado* v. *Preston*, 22 D.P.R. 659; *Solá* v. *Castro*, 32 D.P.R. 804; *Blondet* v. *Benítez*, 33 D.P.R. 409, y *Benítez* v. *Benítez*, 34 D.P.R. 222, invocados por la parte apelante. Aquí no se trata de un márshal que al ejecutar una sentencia vende en pública subasta al mejor postor bienes situados en otro distrito judicial, sino de un márshal que cumple a nombre de una parte en un pleito determinada obligación impuéstale por la corte en su sentencia.

La cuestión relativa a si los menores demandantes en el pleito sobre cumplimiento de transacción no tenían derecho alguno hereditario, carece de importancia. Aunque se concluyera que no lo tenían, se trataría de un error de derecho y no de hecho que no podría invocarse para anular la transacción. *Arandes* v. *Báez*, 20 D.P.R. 388; *American Railroad Co.* v. *Wolkers*, 22 D.P.R. 283; *Goffinet* v. *Manrique*, 34 D.P.R. 507, 511.

Es evidente a virtud de todo lo expuesto que los demandados son terceros hipotecarios. Compraron de personas que tenían su derecho inscrito. Las causas de nulidad que se alegan, unas no constan del registro y las que constan no lo son.

En cuanto al pronunciamiento de costas, atendidas todas las circunstancias concurrentes, no nos sentimos justificados para resolver que la corte de distrito abusara de su discreción al imponerlas.

*Debe confirmarse la sentencia apelada.*